Thompson, J.,
delivered the opinion of the court. An application is made for a new trial, on two grounds.
1st. That the verdict was against evidence; and,
2d. That the court improperly precluded the defendant from showing that there was a mistake in the partition deed, under which the parties respectively claimed, by which the lessors of the plaintiff had more land than was intended to have been conveyed.
From the testimony, as stated in the case, it appears that Johannes Putnam, the father of the lessors of the plaintiff, and Mary Bowen, the mother of the defendant, were brother and sister, and children to Victor Putnam, under whose will, bearing date the 5th of July, 1755, they derived title. That on the 19th day of September, 1765, the children of Victor Putnam executed a partition deed, whereby lot ISTo. 1 was conveyed to Johannes Putnam, father to the lessors *452 of the plaintiff, and lot No. 8 to Mary Bowen, mother to the defendant; and the question between the parties is, where is the line of division between the two lots ? The plaintiff having made out a title to lot No. 1, and the defendant to lot No. 8, James Lansing, a surveyor, and witness on the part of .the plaintiff, testified that he had run the western and northern lines of lot No. 1, according to the partition deed: and that some of the premises in question, according to such survey, were included in that lot.
Jacob Bees, a witness on the part of the defendant, swore he was 55 years old, and that as long ago as he could remember, Mary Bowen was in possession of the land now held by the defendant, and that she died in posses-[*361] sion; *she had some land enclosed in fence down as far south as the road; she used to live 4 or 500 paces south of the road, but that just before the war. she moved down close to the north side of the highway. That about 14 or 15 years ago, Johannes Putnam showed him his west line, and told him he began at the Mohawk river, and ran northerly nearly to the highway, to a pine tree, and that the land north of that was his sister’s, Mary Bowen. That when Johannes showed him this line, Mary was in possession of the land north of the road. That about seven or eight years ago, Francis I. Putnam put up a stone near the pine tree shown him by Johannes, and said that was hia corner, and that at this time the defendant was in possession of most of the land on the north side of the road, which he now holds. That the whole of the land now held by the defendant was not cleared or in fence, at the time of Mary Bowen’s death.
Jacob Hall, another witness on the part of the defendant, swore that about 36 years ago, Johannes Putnam told him his land went no further north than the road, and that Mary Bowen owned the land north of the road. That at this time, or shortly after, Mary Bowen lived near the road; she had before lived farther north. Johannes Putnam called * the witness particularly to show him where his line was. *453 It appeared also, by the testimony of Abraham Conyne, that about ten years ago he applied to Francis I. Putnam, to rent him part of a house jthat stood near the road, on the north side; that the said Francis declined hiring it to him, but referred him to the defendant, of whom the witness leased the house for one year; the witness understood that Putnam did not claim north of the road. Lewis Clement also testified, that about seven or eight years ago, he assisted Francis. I. Putnam in making a fence between these lots on the south side of the road ; that the defendant.came to them and inquired of Putnam if he was making the fence on the line, to which he answered that he was, as it had been shown by Jacob Rees and the defendant. It appeared also that Mary Brown died about 15 years ago.'
*On the part of the plaintiff it appeared, that [*362] part of the premises in question, adjoining the road, were unimproved at the expiration of the war. It also appeared that about six or seven years ago, the lessors of the plaintiff claimed the premises, by threatening to dispossess one Peter Lawrence, who afterwards took a lease under them. But Lawrence had the possession from Jacob Rees, who held under Abraham Conyne, who, it appears, had hired it from the defendant.
The partition deed between the ancestors of the parties bears date in the year 1765, wherein lot Ho. 1 claimed by the lessors of the plaintiff, is described as beginning at the Mohawk river, and running a northerly course 36 chains, describing no monument at the termination of this line. It appears from the testimony of the surveyor, that to extend this line northerly the number of chains given in the deed, and then pursue the other given courses, would include part of the premises in question. But the testimony on the part of the defendant appears to me to be strong and irresistible with respect to the actual possession for a long series of years; and that, in fact, no possession was ever had of the premises by the lessors of the plaintiff, or their father, under that deed. And that, admitting the deed to cover the *454 land, still the plaintiffs, and those under whom they claim, have abandoned it for such a length of time as to preclude them from a recovery, at least ^n this form of action. It is true a man may be mistaken with respect to his title, and, perhaps, ought not to be concluded by his confession, if made under circumstances inducing a suspicion of imposition or ignorance, neither of which appears in this circumstance, and when acquiesced in for the length of time, as in -the present case, he ought to be concluded. It appears that the premises lay north of, and adjoining to, the highway, which is the division line between the parties, according to their present possessions: the lands of the plaintiff laying to the south, and those of the defendant to the north of this road. Two witnesses on the part of the defendant testify, that as much as 36 years ago, which must have been very shortly after the partition, Mary Bowen was [*363] in the possession *of the premises, the possession of Johannes Putnam going no further north than the highway; and it appears by the testimony of one witness, that as far back as the period above mentioned, Johannes Putnam showed him the line between him and his sister Mary, and declared to him that his land went no farther north than to the road; that the land north of the road was his sister Mary’s. The same declaration was made to another witness about 14 or 15 years ago, and since the .death of Johannes Putnam, the lessors of the plaintiff have repeatedly recognized the same line, both by their declarations and acts,-and never showed any dissatisfaction until about six or seven years ago. Thus it is clear and conclusive, from the testimony, that the defendant and Mary Bowen, his mother, under whom he claims, have been in possession of the premises for at least 36 years, claiming them and using them as their own, adversely to any other claim, and with such repeated recognitions by the lessors of the plaintiff and their father, of the right of Mary Bowen, as to show conclusively that they disclaimed having any right or title to the premises, which is sufficient to. rebut every pre *455 sumption that Mary Bowen held under them. The premises being held under such circumstances, for such a length of time, is, we think, sufficient to protect the possession against this action.
We are of opinion, therefore, that the verdict is against evidence, and that a new trial ought to be granted.
Being in favor of a new trial, it would be unnecessary to give an opinion on the other question, did the court entertain the least doubt on the subject. The plaintiff’s deed gives 36 chains on the first line; the defendant contended it ought only to have been 29 chains, and the testimony offered and overruled, was to prove that fact: this was not .to explain any ambiguity, but was directly contradictory to the deed, and manifestly inadmissible. [1]

 See Cameron v. Irwin, 5 Hill, 272; Clark v. Wethey, 19 Wend: 320* Fuller v. Acker, 1 Hill, 473; Jackson v. Hart, 12 J. R. 77; Jackson v. Cray, 1? Id. 427; Fitzburgh v. Rumyon, 8 J. R. 375; Jackson v Britton., 4 Wend. 507