# Bartholomew McNamara

## *v.*

# James D. Seaton.

1. Boundary line—*parties concluded by, if established by agreement.* Where adjoining land owners agree upon a boundary line, and enter into possession and improve the lands according to the line thus agreed upon, they will be concluded from afterwards disputing that the line agreed upon is the true one, even when the Statute of Limitations has not run.

2. Limitation—*possession must be adverse, to bar a recovery under statute.* Where one of two adjoining land owners has possession for over twenty years of a portion of the other's land, by reason of the division fence not being on the line, such possession will not bar a recovery by the true owner, unless the fence was agreed upon as the boundary line, and the possession taken and held in pursuance of such agreement, or unless the possession is adverse to the title of the true owner.

3. Possession—*of part of adjoining tract, when adverse.* Where the owner of land, in inclosing the same, extends his inclosure and embraces therein a portion of an adjoining tract, and continues in the possession thereof for twenty years, asserting ownership, he can claim the benefit of the Statute of Limitations as to all land embraced within his inclosure.

4. Same—*without claim not adverse, so as to bar a suit for recovery.* But where the owners of adjoining tracts of land build a fence to separate them, without knowing where the line is, and without agreeing to the fence as a boundary line, and they afterwards have the lands surveyed without reference to the fence, and ascertain that the fence is not on the line, but that one has a strip of land on his side of the fence belonging to the other, and they both recognize the line established by the survey, and the one in whose inclosure the other's land is, makes no claim to the possession of it, the mere fact of its being in his inclosure is not such possession as will bar an action for its recovery by the true owner in twenty years.

Appeal from the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. STEWART & PHELPS, for the appellant.

Messrs. PORTER & MOSHER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by James D. Seaton, in the circuit court of Warren county, against Bartholomew McNamara, to recover a tract of land 100 rods long, and being 3 rods wide at the north end, and running to a point at the south end, the premises constituting a part of the west half of the south-west quarter of section 17, and the north half of the north-west quarter of the north-west quarter of section 20, in township 12 north, range 3 west of the fourth principal meridian.

A trial of the cause before a jury resulted in a verdict in favor of the plaintiff. The defendant brings the record here by appeal, and, in his argument, contends that the plaintiff's right of recovery was barred by twenty years' adverse possession of the land by the defendant and his grantor before the commencement of the action.

The east half of the south-west quarter of section 17, and the north half of the north-west quarter of the north-east quarter of section 20 originally belonged to James Maley, while the west half of the south-west quarter of section 17, and the north half of the north-west quarter of the north-west quarter of section 20 were owned by W. C. Maley. As early as 1853, these parties were in possession of their respective tracts of land, and had indicated the partition line between their lands by setting out a hedge which was supposed to be upon the line until 1857, when the division line of the lands was surveyed and established by a surveyor, when it turned out that the hedge run over on the lands of W. C. Maley, leaving the strip of land in question inclosed with the lands of James Maley. In 1868, James Maley sold and conveyed to the defendant, who has held the possession of the lands conveyed, in connection with the premises in question, until the bringing of this action.

While it is true the defendant and his grantor have held the possession of the strip of land in dispute for a period exceeding twenty years, yet the possession will not bar a recovery unless a boundary line was agreed upon, and the possession was taken and held in pursuance of such an agreement, or unless the possession of the defendant and his grantor of the strip of land in controversy was adverse to the title of the plaintiff.

It has been held, and the rule may be regarded as well settled, not only here but in other States, that, where adjoining land owners agree upon a boundary line, and enter into possession and improve the lands according to the line thus agreed upon, the parties will be concluded from afterwards disputing that the line thus agreed upon is the true one, even where the Statute of Limitations has not run. *Crowell* v. *Maughs*, 2 Gilm. 419; *Bauer* v. *Gottmanhausen*, 65 Ill. 499; *Yates* v. *Shaw*, 24 Ill. 367. But, slight acts of the parties from which an agreement might be inferred can not be regarded as conclusive. Where adjoining land owners have clearly agreed upon a division line, and upon the faith of that agreement possession has been taken, and money expended, it would be manifestly unjust to permit a line thus established to be set aside at the will of either party; but while this is true, justice and sound policy alike demand that a contract, before it should be conclusive, should be established by clear proof, and followed by possession according to the line agreed upon.

In this case the evidence entirely fails to show that the two Maleys who owned the adjoining lands agreed that the old hedge should be the permanent boundary line of their lands. When the hedge was set, they did not know where the true line was. It was set at random. They occupied, it is true, according to the hedge, but, as early as 1857, they had the line run and established. They did not then, or afterwards, recognize or agree that the old hedge should be the line between their lands, but, on the other hand, directed the surveyor to divide the lands equally between them, and they would plant a hedge on the line. The surveyor testified the "Maleys had no differ-

ence of opinion as to this line. James told me to divide the land equally; William also. They had a conversation, and said they would pay no attention to the old hedge."

If, then, the proof fails to show that a line was established by agreement, the only remaining question is, whether the possession of the premises in controversy by the defendant and his grantor, James Maley, can be regarded as adverse, so that the defendant can rely upon the Statute of Limitations to protect his possession.

In *Turney* v. *Chamberlain*, 15 Ill. 271, where the question arose in regard to what constituted an adverse possession, it was said: "To constitute an adverse possession sufficient to defeat the right of action of the party who has the legal title, the possession must be hostile in its inception, and so continue without interruption for the period of twenty years. It must be an actual, visible and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner. It need not, however, be under a rightful claim, nor even under a muniment of title. It is enough that a party takes possession of premises, claiming them to be his own, and that he holds the possession for the requisite length of time, with the continual assertion of ownership."

It is no doubt true, where an owner of a tract of land, in inclosing the same, extends his inclosure and embraces therein a portion of an adjoining tract, and continues in the possession thereof for twenty years, asserting ownership, he would be in a position to claim the protection of the Statute of Limitations as to all lands embraced within his inclosure.

If an adjoining owner would suffer another, in fencing his land, to inclose a portion of the adjoining tract, and occupy the same, claiming title coextensive with his inclosure, for twenty years, no reason is perceived why the bar provided by the statute would not be complete.

But such is not this case. James Maley, from the time of taking possession, in 1853, down to the time he sold to the defendant, in 1868, never, so far as the evidence shows, asserted title or claim to the disputed premises, but, on the other hand,

recognized the title of his brother, W. C. Maley. In his testimony he says: "W. C. Maley owned land on west side of the hedge; hedge fence was not considered as the true line between myself and W. C. Maley; I did not claim to own all land lying on the east side of the hedge; a strip running with said hedge I did not claim to own; I never used or worked said strip of land."

Again, the Maleys both testify that, when the defendant purchased, he was notified where the true line ran, and that the controverted strip of land did not belong to his grantor, but was the property of W. C. Maley.

We do not regard the evidence sufficient to establish an adverse possession of the land in dispute. The possession of James Maley was in no manner hostile to the title of his brother. He claimed no interest in the land, and did not even claim to be in possession of the disputed strip. So far as the proof shows, W. C. Maley was at liberty, at any time he saw proper, to use the land or control it in such manner as he desired.

As the possession relied upon by the defendant did not appear, from the evidence, to be adverse, the verdict of the jury was warranted by the evidence.

The judgment will therefore be affirmed.

*Judgment affirmed.*