# WHEELING.

## GWYNN v. SCHWARTZ.

*(ENGLISH, JUDGE, absent.)

Submitted January 25, 1889.—Decided June 26, 1889.

1. NEW TRIAL—WRIT OF ERROR.
    When in any civil suit there is an order made granting a new trial, a writ of error will lie from such order, either before or after the new trial has been had, and without regard to the finding on such new trial. (p. 494.)

2. NEW TRIAL.
    The verdict of a jury ought not to be interferred with, and a new trial awarded by the court, when the evidence is contradictory, if, when most favorably considered in support of the verdict, it does not still appear, that the verdict was plainly not warranted by the evidence. (p. 494.)

3. BOUNDARIES—COURSES AND DISTANCES.
    In the description of lands as to questions of boundaries the rule is settled in Virginia and West Virginia, that natural landmarks, marked lines and reputed boundaries will control mere

*On account of illness.

courses and distances or mistaken descriptions in surveys and conveyances. (p. 496.)

4. BOUNDARIES—QUANTITY OF LAND.
    The statement of the quantity of land supposed to be conveyed, and inserted in deeds by way of description, must not only yield to natural landmarks and marked lines, but also to descriptions in deeds by courses and distances. (p. 497.)

5. BOUNDARIES—COURSES AND DISTANCES.
    Disputed boundaries between two adjoining lands may be settled by express oral agreement, executed immediately and accompanied by possession according thereto. (p. 500.)

6. BOUNDARIES—EVIDENCE.
    Long acquiescence by one adjoining proprietor in a boundary established by the other is evidence of such agreement so fixing the division-line between them. (p. 500.)

7. BOUNDARIES—EVIDENCE.
    Such acquiescence may be shown by the adjoining land-owners having actual possession and cultivating to such line ; or, if the line run through woods, by the proprietor, who established such division-line, with the knowledge of the adjoining land-proprietor always clearing up to this line and, with his like knowledge cutting timber and peeling bark up to this division, the other land-owner making no objection to such claim or such acts of ownership, though he was present when such acts were being done. (p. 502.)

8. BOUNDARIES—EVIDENCE—NEW TRIAL.
    Such acquiescence, in this State for a period of over ten years will justify a jury in inferring, that such parol agreement establishing such division-line existed ; and a verdict based on such inference ought not to be set aside as plainly contrary to the evidence. (p. 503.)

Statement of the case by GREEN, JUDGE :

This is an action of ejectment brought August, 1884, in the Circuit Court of Mason. The declaration was in proper form, and to it the defendant pleaded not guilty, on which issue was joined. There was no controversy in the court below, nor is there any in this Court about the pleadings. When the case was tried first, the jury on February 10, 1886, found : "We, the jury, find the defendant not guilty," and thereupon the plaintiff, Amos Gwynn, moved the court to set aside the verdict and award him a new trial, because the same was contrary to the law and the evidence, which

motion the court sustained, on condition the plaintiff pay
unto the defendant his costs expended in the trial of the
cause at that term of the court; and the defendant took a
bill of exceptions to this action of the court, in which all
the evidence before the jury and all the proceedings had in
the trial of the case are set out. No instructions were asked
by either party. The whole controversy was as to the proper
location of the division-line separating the farms of the
plaintiff and the defendant.

The evidence shows, that one D. C. Sayre owned a tract
of land of 7,000 acres on Little Mill creek in Mason county.
On August 8, 1856, he gave to his two grandchildren, Daniel
W. Vanmetre and Miriam McCullough, about 400 acres, as
he supposed, dividing it into two nearly equal parts. He
conveyed one of these to Daniel W. Vanmetre, and on the
same day he conveyed the other part to Joshua McCullough.
March 3, 1880, Daniel W. Vanmetre and wife conveyed the
land so conveyed to him to the plaintiff, Amos Gwynn, by a
deed, which was duly admitted to record. Joshua S. Mc-
Cullough conveyed the land so conveyed to him to Henry J.
Sine by a deed dated December 12, 1866, duly recorded;
and Henry J. Sine and wife by deed duly recorded conveyed
said land to the defendant, Levi Schwartz. The whole con-
troversy in this case is in reference to the true division
line between these two tracts of land.

On reading these two deeds one is struck with some
peculiarities in them. Though they were both deeds of
gift, yet on the face of the deeds they appear to be sales; for
the consideration named in each of them is $300.00 cash, and
both of them contain general warranties of title. In the
next place, while each deed states, that the land conveyed is
"about two hundred acres," yet it is perfectly obvious accord-
ing to the metes and bounds, that the land conveyed to
Joshua S. McCullough now owned by the defendant,
Schwartz, contained ten or twelve acres more than the land
conveyed to Vanmetre now owned by the plaintiff. The
two tracts are of the same shape, (parallelogram,) 310 poles
long, one being 106 poles wide, and the other 100 poles
wide. Again, it would seem from these deeds, that the
division-line between the two tracts—the subject of dispute

now—was not actually run, when the deeds were made. The deed to McCullough gives the length as 310 poles, while the deed to Vanmetre gives the length as 300 poles. In fact, the inference to be drawn from the reading of these deeds is, that very few, if any, of the metes and bounds of these two parcels of land were then actually run, as no corners are stated to have been made or marked. The courses of the tract in the deed to McCullough are as follows: "Beginning at the lower corner of a tract sold to Miriam Sayre in Little Mill creek bottom, and running with said line west three hundred and ten poles to the closing line of the 7,000 acre tract, and with said line north eighteen degrees west, one hundred and six poles; thence east three hundred and ten poles to the centre of Little Mill creek, thence up the same with its meanders to the beginning." While the courses of the Vanmetre tract are thus given in his deed: "Beginning at the lower corner of a tract sold to Joshua McCullough in Little Mill creek, and running with said McCullough's line west three hundred poles to the closing line of the 7,000 acre tract, thence with said line north, eighteen degrees west, one hundred poles, thence east three hundred poles to the middle of Little Mill creek, thence up the same with its meanders to the beginning."

The surveyor, in his report made to the court in this case, states, that the parties to this suit—plaintiff and defendant—point out to him a birch on Little Mill creek, which they agreed was the lower corner of the tract sold to Miriam Sayre in "Little Mill creek bottom" and therefore the beginning corner of the defendant's (Schwartz's) tract of land. The surveyor then ran a line nearly west—that is, N. 88 deg. 40 min. W.—along what was said by the said parties to be a line of the Miriam Sayre tract, till it intersects the closing line of the 7,000 acre tract of Daniel C. Sayre at a hickory marked as a corner, which it was agreed by the said parties was the second corner of the defendant's (Schwartz's) tract of land.

If there had been no parol evidence in this case, as neither of the deeds giving the boundaries of the tract of land owned by the defendant, Schwartz, or by the plaintiff, Gwynn, give any marked corners but only the metes and distances of each

tract, all that could be done to ascertain the boundaries of
these tracts of land and the true division-line, between them
would have been to run out these two tracts of land according
to the courses and distances contained in the deeds. The
true division-line between these tracts would then have been
S. 88 deg., 40 min. E., so as to be parallel with the first line
of the tract conveyed to McCullough ; for though this line was
said in the deed to run west, yet it did not run quite west but
N. 88 deg., 40 min. W., and it is therefore to be supposed
that the division-line between these two tracts, stated in the
deed to run east, really ran S. 88 deg., 40 min. E. or parallel
with the first line. The division-line described in one of
these deeds as 300 poles and the other 310, would according
to both deeds terminate at Little Mill creek.

The plaintiff insists, that the division-line between the
tracts of the plaintiff and defendant must be found by so run-
ning out the courses and distances of the deed, under which
he and defendant claim. This, if done, would show the
verdict of the jury in favor of the plaintiff to be correct, and
the judgment of the court below, of September 15, 1886,
would be affirmed. The defendant however insists, that there
was before the jury abundant evidence to justify the ver-
dict of the jury on the first trial for the defendant, and that
the court ought then to have entered up a judgment for the
defendant instead of granting on the motion of the plaintiff
a new trial, as it did on February 20, 1886. All the evidence
given at this trial is certified by the court ; and in deciding,
whether the Circuit Court erred in awarding such new trial,
we are bound to give full weight to the defendant's evidence ;
and, when the evidence in favor of the plaintiff conflicts with
that of the defendant, we must reject the plaintiff's evidence.

When the evidence is thus viewed, we may regard this as
the case as proven by the evidence in the estimation of the
jury : that D. C. Sayre, before he executed to his grand-
children said two deeds dated August 8, 1856, under which
the plaintiff and defendant respectively claim, marked as a
corner of the division-line between the said two tracts of
land a hickory on the closing line of the 7,000 acre tract, and
that said hickory is on the division-line between these two
tracts of land, as is claimed by the defendant; that D. C.

Sayre, bsfore he made these two deeds of August 8, 1856, also marked the trees on each side of a road, where it crossed this division line between these two tracts; that these trees were marked as a corner and as line trees on this division-line between these two tracts afterwards deeded by Sayre, when a survey of this 7,000 acre tract was being made; that when the distance was run, showing the width of the tract according to the deeds, he intended making, he made the surveyor stop, set his compass on this division-line, as he intended it should be, and mark these trees as upon it; that these trees are on the division-line of these tracts as claimed by the defendant; that D. W. Vanmetre, under whom the plaintiff claims, went with a certain person to look at this land which had been deeded to him by D. C. Sayre, Rollins having an idea of purchasing it; that one Shirley pointed out to them one of these marked trees on this road as the division-line between the tracts of plaintiff and defendant, and that from this tree they had traced this division-line its whole length by well-marked trees; that the line thus recognized by the vendor of the plaintiff as the division-line is the line now claimed by the defendant as the true division-line; that it had been run and marked by a surveyor named Rollins, who was employed by A. R. Sayre, who was a son of D. C. Sayre, under whose two deeds of August 8, 1856, both plaintiff and defendant in this suit claim; that in running this division-line he was guided by a plat furnished by D. C. Sayre, who was a surveyor; and these trees, which I have spoken of as marked by him as on the intended division between these two tracts, which he had marked before he made the deeds of August 8, 1856, were noted in this plat as on this division-line; and that this surveyor, Rollins, so ran the division-line as to make these trees stand upon it, though in so doing the line was not straight; that this division-line as so run by Rollins is still found distinctly marked and is far from being a straight line; that there are now found still standing and well marked no less than thirty eight trees along this divison-line so run and marked by Rollins in 1870; that the line as shown by these marked trees is so crooked, that it would be difficult to suppose, it was ever run by a surveyor for a straight line. Some of these trees are

north of where they should be, if the line was straight, and others are south, and distant from the straight line from four links to as much as ninety links; that the defendant always claimed this line, as run and marked by Rollins in 1870, as the division-line between him and the tract owned by the plaintiff; that he and those, under whom he claimed always cut wood and lumber up to this line; that Vanmetre, the plaintiff's vendor, knew of this line and made no objection to his doing so; that Vanmetre was frequently there, when the defendant's vendor was cutting timber and hauling tan-bark up to these trees as marked by Rollins as on his division-line between them; that Vanmetre knew, that those, under whom the defendant claimed, held, that this line as run by Rollins was the division-line, for they had warned Vanmetre not to cut beyond this line; and they cut up to it without any objection from Vanmetre; that the land lying between this crooked division-line run by Rollins in 1870 and the line run by courses and distances in the two deeds from D. C. Sayre of August 8, 1856, under which the plaintiff and detendant claim, is the land in controversy in this suit; that it contains twenty acres and is in woods; while the defendant and those, under whom he claims, by cutting timber and peeling bark up to this Rollins line, ever since it was run up to the institution of this suit, was getting the use of this land in controversy; and yet the defendant and those, under whom he claims never did have actual possession of the land in controversy for a longer period than eight years.

If the views of the plaintiff are followed, his tract would contain 272¼ acres instead of about 200 acres, as called for by his deed; but, if the views of the defendant are followed, and this Rollins line is held to be the division-line, the tract of the plaintiff will contain 250 acres, and the tract of the defendant 229¾ acres.

*J. B. Menager* and *Simpson & Howard* for plaintiff in error.

*Gunn & Gibbons* for defendant in error.

GREEN, JUDGE:

The only question in this case is whether the court below

in its judgment rendered on February 20, 1886, erred in setting aside the verdict of the jury in favor of the defendant as contrary to the law and the evidence, and in awarding a new trial. A writ of error may be granted to such judgment, without reference to the final judgment in the case, and even without waiting for the new trial to be had. See Code 1887, c. 135, § 1, par. 9. A bill of exceptions was taken by the defendant to this action of the court, and in it the court certified all the evidence. The only question in controversy before the jury was the true location of the division-line between a tract of land owned by the plaintiff and a tract owned by the defendant, the plaintiff complaining, that the defendant had encroached on his tract of land by taking possession of about twenty acres, which he insisted, if the division-line between them was correctly located, was a part of his tract. The question in controversy was therefore much more a question of fact than of law. It has always been regarded in Virginia and in this state as a delicate matter for a court to interfere with the verdict of a jury on a question of fact. The jury is the judge of the weight and credit to be attached to the evidence; and it is only in cases of manifest abuse or plain departure from right and justice, that the court can interfere with the finding of a jury in such matters by granting a new trial. See *Ross* v. *Gill*, 1 Wash. (Va.) 88; *McDowell's Ex'r* v. *Crawford*, 11 Gratt. 377; *State* v. *Hurst*, 11 W. Va. 75; *State* v. *Thompson*, 21 W. Va. 756; *Black* v. *Thomas*, Id. 712; *Blosser* v. *Harshbarger*, 21 Gratt. 216; *Grayson's Case*, 6 Gratt. 712; *Sheff* v. *City of Huntington*, 16 W. Va. 307.

These cases show that the verdict of the jury ought not to be interferred with, and a new trial awarded, when the evidence is contradictory, and when most favorably considered in support of the verdict of the jury it does not appear, that the verdict was plainly not warranted by the facts proven. I have stated however the facts in this case, as shown by the record. Does it plainly appear from these facts proven, that the verdict of the jury in favor of the defendant was unwarranted by these facts?

The jury in finding a verdict for the defendant must have regarded it as a fair inference from the facts proven that,

the line run and marked by Rollins in 1870 was the division-line between the tracts of the plaintiff and the defendant. If this were an inference which can be drawn from the facts proven, then the verdict of the jury could not be properly set aside by this court. The counsel for the plaintff claims, that this Rollins line already run and marked as the division-line between these two tracts could not have been the true division-line because the true divison-line according to the deeds was a line running east and west, and parallel with the base line, but the line run by Rollins 1870 varied from a parallel with the base line by 2 deg., 15 min., which in the length of the division-line would make a variation of fourteen poles. Then, again, this division-line as run by Rollins would make the width of the defendant's tract 109 poles instead of 106 poles, as called for by the deeds. The land contained in the defendant's tract, if this Rollins division-line be regarded as the true line, would be 250 acres instead of about 200 called for in the deeds, and lost by this Rollins line, which though well marked is far from a straight line, as called for by the deeds; on the contrary some of the marked trees along this Rollins line are nearly twenty yards from where they would be, if the line had been run straight; and, lastly, this Rollins division-line was not run by Daniel C. Sayre, when on August 8, 1856, he conveyed to his grandchildren, under whom the parties to this suit claim, these two tracts of land, but some fourteen years after these two deeds were made, and it was then a line run at the instance of a party, under whom defendant claims. This is true; but it was proven, that, before these two deeds, under which the plaintiff and defendant respectively claim, made August 8, 1856, the common grantor, Daniel C. Sayre, had actually marked several trees on this division-line, as afterwards run by Rollins, as trees, which should be on the division-line between the two tracts he was going to convey to his grandchrildren; and, when Rollins years afterwards ran this division-line, he was guided in running it by a plat of these two tracts furnished by Daniel C. Sayre, the common grantor of each of them originally, on which plat these trees were marked along the division-line between the two.

tracts; and, this being the case, the jury might have regarded the division-line as in part run prior to the making of the two deeds by Daniel C. Sayre in 1856, and not altogether by Rollins in 1870 for the first time.

We will now consider the objections, which are urged by the plaintiff's counsel against this line as run by Rollins being regarded as the division-line between the tracts of the plaintiff and of the defendant; and first as to the departure of this line in course and distance from the division-line as called for by the deeds. The variation in course is 2 deg., 15 min., and the Rollins line exceeds in the length the division called for in the deeds not less than fifty three poles. In the description of lands or question of boundaries the rule is settled in Virginia and in this State, that natural lines and reputed boundaries will control mere courses and mere courses and distances or mistaken description in surveys and conveyances. See *Dogan* v. *Seekright,* 4 Hen. & M. 125; *Coles* v. *Wooding,* 2 Pat. & H. 189; *Baker* v. *Seekright,* 1 Hen. & M. 177; *Smith* v. *Davis,* 4 Gratt. 50; *Adams* v. *Alkire,* 20 W. Va. 486. See, also, *Cherry* v. *Slade's Adm'r,* 3 Murph. 82.

If then this Rollins division-line be proven to be the marked division-line between the tracts of the plaintiff and defendant, it must be held to be the true line though it differs in its courses and distances from the division-line called for in the deeds. It is a crooked line, portions of it being nearly twenty yards from where it would be if it were a straight line between its extremities. See *Cowen* v. *Fauntleroy,* 2 Bibb 261.

We have less difficulty in disregarding to a considerable extent the courses and distances of this division-line as named in the deed, because it is apparent, that, as stated in the deed, the distance as well as the course was to a considerable extent a surmise and can not be relied upon. Thus in the deed from Daniel C. Sayre to David Vanmetre dated August 8, 1856, the length of this division-line is stated to be 300 poles; but in a deed of the same date from Daniel C. Sayre to Joshua McCullough, under which the defendant claims, this division by all the deeds is the middle of Little Mill creek, and the other terminus is the closing line of the 7,000 acre tract. Now the survey made in this case under the order of

the court shows, that the shortest line, which could be run
between these two termini, would exceed 350 poles in length,
or exceed the distance called for in the deeds from forty to
fifty poles; nor can the course of this division-line as called
for in the deeds be regarded as correct, for it is called an east
and west line in all these deeds, and yet they speak of it as
parallel to the division-line between this tract of the defend-
ant and another tract of McCullough. Its true location was
admitted by both the plaintiff and defendant in this suit;
but instead of being an east and west line as called for in the
deeds, it varied 1 deg., 19 min., its real course being N. 88
deg., 40 min. W. The fact, that, if this Rollins division line
is adopted, it would make the defendant's tract contain 250
acres and the plaintiff's tract only 239½ acres, while the
deeds call for each of them as containing 200 acres more or
less, is entitled to very little consideration in determining
the location of this division-line; for the general rule is, that
a statement of the quantity of land supposed to be conveyed,
when inserted by way of discription only, must yield to
description by metes and marked boundaries. See *Bradford*
v. *Hill*, 1 Hayw. (N. C.) 22 and note; *Drew* v. *Swift*, 46 N.
Y. 204; *Powell* v. *Clarke* 5 Mass. 355.

In the case before us this variation in the quantity of
the land from that called for in the deeds is entitled to much
less consideration than it would ordinarily be entitled to in
fixing the division-line between the two tracts, for, though
both of these tracts of the plaintiff and of the defendant are
said in the deeds to contain about 200 acres, yet it is obvi-
ous from the face of the deeds that the tract of the defendant
was the larger of the two, for it is of the same shape
with that of the plaintiff,—oblique parallelograms, of the
same length east and west,—while the defendant's tract was
in width north and south 106 poles, and the plaintiff's
tract was only 100 poles wide; and, as the two tracts con-
tained together 479½ acres instead of 400 acres, as called for
by the deeds, we would naturally expect the defendant's tract
to exceed 200 acres considerably. If the boundary between
the two tracts be fixed as claimed by the plaintiff, the
defendant's tract will contain only 207½ acres, while the
plaintiff's will contain 272 acres, a result obviously much

more in conflict with the face of the deeds than is caused by taking the Rollins line as the division-line between the tracts.

It only remains to inquire, whether there was before the jury evidence, from which they could draw the inference, that the line as run by Rollins was the true division-line between the two tracts.    These two tracts, one claimed by the plaintiff and the other by the defendant, had their origin in two deeds made by Daniel C. Sayre to his grandchildren on August 8, 1856.    The plaintiff claims under one of these grantees, D. W. Vanmatre, and the defendant under the other, Joshua McCullough.    There is evidence, from which the jury might conclude, that one of the termini of this division was fixed by Daniel C. Sayre, and a tree marked as such, before he made these deeds, and also two trees, where this division-line crossed a certain road, were also marked as trees on this division-line before Daniel C. Sayre made these deeds.    But this division-line was not actually run and marked as such, before or when these deeds of August 8, 1856, were made, further than the marking of these three trees on them.

Some fourteen years after these deeds were made, at the instance of one, under whom the defendant claims, Rollins, a surveyor, ran and marked this division-line.    In so doing he was guided by a plat of these tracts of land purchased by Daniel C. Sayre, the common grantor of them, who was a surveyor, and who had on this plat marked the trees which, before he made said deeds, he had marked as on this division-line.    The surveyor, Rollins, so ran the division-line, that all these marked trees should be upon it.    In so doing he departed considerably from the courses and distances named in the deeds.    He marked forty or fifty trees upon the division-line thus run, most of which are still standing. Those, under whom the defendant claims, and the defendant, have ever since for a period not less than fourteen years before the institution of this suit claimed this as the division-line between these tracts; and this claim is set up by the defendant and those, under whom he claims.    The defendant's claim was shown by his cutting timber and stripping bark off from trees up to this division-line as run by Rollins,

the person owning the other tract being frequently present, when this was being done, and making no objections thereto, though he well knew the location of this division-line as claimed by those, under whom the defendant claimed. It had been pointed out to him, and he had been warned not to cut timber beyond this division-line as run by Rollins; and on one occasion the party, under whom the plaintiff claims went along the Rollins division-line and pointed it out to a person, who was thinking of purchasing his land, as the boundary of it; and some seven years after this line was run by Rollins, the defendant moved onto his tract of land and cleared a part of it up to this Rollins line, and the plaintiff and those, under whom he claimed, made no objection to his doing so or to his cutting timber up to it. Before the plaintiff purchased his tract of land of Vanmetre, he was shown one of the marked trees on this Rollins division-line and was told, that it was on the division-line between the two tracts; and that, ever since the plaintiff bought in 1880 of Vanmetre this tract, the defendant had claimed this Rollins line as the division-line between the tracts, and had continued to cut timber off from it and to grub up to it without objection on the part of the defendant.

Can we on this character of evidence say, that the jury inferring from it and deciding, as they did at the first trial, that this Rollins line was the division-line between the tracts of the plaintiff and the defendant, so plainly erred, that the court ought to have set aside their verdict and awarded a new trial, as it did? It seems to me, that the inference to be drawn from such evidence was an inference of fact and not a conclusion of law. It was therefore peculiarly the duty of the jury to draw the inference, and not that of the court; and the inference drawn by the jury was not so clearly erroneous as to justify the court in interfering with the verdict.

Whatever doubt may exist as to whether this Rollins division was originally the division-line between these two tracts, as established by Daniel C. Sayre in 1856, when he formed and conveyed these two tracts, we think, the evidence justifies the conclusion that not less than fourteen years before the institution of this suit, this Rollins division-line was

run by a surveyor at the instance of one, under whom the defendant claims; that Vanmetre, under whom the plaintiff claims, knew, that this division-line had been so run; and, though he had nothing to do with the running of the line, he was cognizant of its having been so run, and that the defendant and those, under whom he claimed, regarded it as establishing the boundary between the two tracts, and the said Vanmetre and the plaintiff acquiesced in this Rollins line as the established division-line between the two tracts for some fourteen years before the institution of this suit, permitting the defendant and those, under whom he claimed, to clear up to this line in places, and in other places to cut timber up to the line without objection.

It may be regarded as settled, that a disputed boundary between two adjoining proprietors may be settled by parol agreement, when the agreement is accompanied by possession according thereto. See *Jackson* v. *Dysling*, 2 Caines, 198; *Kip* v. *Norton*, 12 Wend. 127; *Terry* v. *Chandler*, 16 N. Y. 354; *Vosburg* v. *Teator*, 32 N. Y. 568; *Smith* v. *Hamilton*, 20 Mich. 433; *McNamara* v. *Seaton*, 82 Ill. 498–500. Such parol agreement is not regarded as passing any real estate from one proprietor to the other but as simply ascertaining the line, to which their respective deeds extend; and hence it follows, that long acquiescence by one of adjoining proprietors in a boundary as established by the other is evidence of an agreement, that such is the boundary. *Kip* v. *Norton*, 12 Wend. 127. What is meant by long acquiescence in this proposition is not definitely settled by the decisions. Thus in *Sneed* v. *Osborn*, 25 Cal. 626, Judge RHODES, delivering the opinion of the court, says: "The authorities are abundant to the point that, when the owners of adjoining lands have acquiesced for a considerable time in the location of a division-line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line. The better opinion is that the considerable time mentioned in the cases must, at least, equal the length of time prescribed by the statute of limitations to bar a right of entry. See *Jackson* v. *Ogden*, 7 Johns, 238; *Jackson* v. *Freer*, 17 Johns 29; *McCormick* v. *Barnum*, 10

Wend. 104;. *Dibble* v. *Rogers*, 13 Wend. 536; *Adams* v.
*Rockwell*, 16 Wend. 285; *Van Wyck* v. *Wright*, 18 Wend.
157; *Boyd's Lessee* v. *Graves*, 4 Wheat, 513.

But in *Kellogg* v. *Smith*, 7 Cush. 375, the court admits the
difficulty of reducing the cases to system and consistency,
and limits itself to deciding, that long acquiescence may give
validity to such transactions, even if they do not possess it
in the first instance. FLETCHER, J., in delivering the opin-
ion of the court, says, (page 379:) " It seems to be settled
by a course of decisions of the Supreme Court of New
York, that, where the owners of adjoining lots of land set-
tle and establish a division-line between them by express
parol agreement, and their agreement is immediately exe-
cuted and is accompanied and followed by actual possession
according to such line, the agreement is binding and conclu-
sive, and such division-line shall not be disturbed, though it
may afterwarde appear, that it is not the true line according
to the paper title; so, when no express agreement is shown,
long acquiescence by one proprietor in the line assumed by
the other is evidence, from which such agreement may be
inferred. *Jackson* v. *Bowen*, 1 Caines, 358–362; *Jackson* v.
*Dysling*, 2 Caines, 198, 201; *Jackson* v. *Vedder*, 3 Johns, 8,
12; *Jackson* v. *Dieffendorf*, Id. 269; *Jackson* v. *Ogden*, 7
Johns. 238–242; *Jackson* v. *Douglas*, 8 Johns. 286; *Jackson*
v. *Gardner*, Id. 308; *Jackson* v. *Smith*, 9 Johns. 100; *Jack-
son* v. *McCall*, 10 Johns. 377, 380; *Jackson* v. *Van Corlaer*,
11 Johns, 123; *Jackson* v. *Freer*, 17 Johns. 29; *Rockwell* v.
*Adams*, 7 Cow. 761, 6 Wend. 467; *McCormick* v. *Barnum*,
10 Wend. 104; *Dibble* v. *Rogers*, 13 Wend. 536. In most of
these cases there had been a possession of more than twenty
years according to the line, but in several of them the pos-
session had been for a less time than twenty years, there
being no sufficient adverse possession to make a title, the de-
cision depending on the force of the parol agreement, and
the occupancy according to such agreement. No particular
time appears to have been settled as necessary, during which
such occupancy should have continued, and the length of the
time of the occupancy was different in the different cases.
The decisions in the cases referred to above were not over-

ruled by the court of errors in *Adams* v. *Rockwell*, 16 Wend. 286."

Since this decision rendered in 1851 the decisions have not reached any clear or distinct conclusion with reference to the controverted point as to the length of time, which must elapse, before an agreement fixing a division-line can be inferred from an acquiescence therein. Thus, in *McNamara* v. *Seaton*, 82 Ill. 500, (decided by the Supreme Court of Illinois in 1876,) the court say: "It has been held, and the rule may be regarded as well settled, not only here, but in other states, that where adjoining land-owners agree upon a boundary line, and enter into possession, and improve the land, according to the line thus agreed upon, the parties will be precluded from afterwards disputing that the line then agreed upon is the true one, even where the statute of limitations has not run. *Crowell* v. *Maughs*, 2 Gilman, 419; *Bauer* v. *Gottmanhausen*, 65 Ill. 499; *Yates* v. *Shaw*, 24 Ill. 367." But, as not according with these views, see *Carleton* v. *Reddington*, 1 Fost. N. H. 291; *Tolman* v. *Sparhawk*, 5 Metc. 469; *Brewer* v. *Railroad Corp.*, Id. 478.

Nor do the decisions indicate in what way acquiescence by one adjoining proprietor in a division-line fixed by another adjoining proprietor is to be proven. It is clear, that one mode of proving this acquiescence is by the actual occupation and cultivation up to such line so fixed without objecttion by the other adjoining proprietor. But this is not the only mode, in which this acquiescence can be shown. If it was, all these decisions, in which it has been held, that the acquiescence, to avail a party, must be for a period at least as long as that, which bars a right of entry, would be idle; for, if this were so, the party cultivating up to the division-line so fixed would acquire this land up to such a division-line, being presumed to be made by the parties by adversary possession. This acquiescence in a division, which has been fixed and marked can be proven by any evidence, that would satisfy a person, that in point of fact such division had been accepted by both of the adjoining land-owners as the division-line between them: for instance, if such division-line run through a wood, by one party cutting timber to such division-line habitually with the knowledge of the other,

who knowing, that he claims this marked line as a division-line, still makes no objection to such cutting.

Applying this law to the facts in this case, the jury from the evidence had a right to infer, that the defendant and those, under whom he claimed, had from the time, when Rollins run the division-line between the tract of the defendant and plaintiff, which was not later than 1870, up to the institution of this suit claimed this Rollins line as the true division-line, and that he had shown by cutting timber and peeling bark up to this Rollins line for some seven years, and then by clearing the land up to the same line along a part of it, and continuing to cut timber up to that along the residue of the tract, the plaintiff and Vanmetre, under whom he claimed, acquiesced in this Rollins line as the true division-line between the two tracts; for, knowing that the defendant and those, under whom he claimed title, claimed this land up to the Rollins line and cut timber up to it for some fourteen years and cultivated for some seven or eight years portions of the land up to the same line, yet neither Vanmetre, under whom the plaintiff claimed, nor the plaintiff himself objected to this occupancy and use of the land in controversy, and thus treated this Rollins line as the true division-line between the tracts; and that said Vanmetre had been along the whole of this Rollins line and pointed it out to a person, to whom he wished to sell, as the true division-line between the two tracts.

In this state ten years by the statute bars a right of entry on land; so the jury from the evidence might well have found in this case, that the acquiescence of the plaintiff and Vanmetre, under whom he claimed, in this Rollins line as the division-line continued for fourteen years before the institution of this suit, or at least for more than ten years, and therefore by all the decisions, this acquiescence in this Rollins line as the division-line between the two tracts had been sufficiently long to justify the conclusion, that it had been agreed upon by the parties as the true division-line between them.

The jury therefore did not plainly err in the first trial in regarding this Rollins line as the division-line between the tracts of the plaintiff and defendant, and in finding a verdict for the defendant.

The court below therefore erred in its judgment rendered February 20, 1886, in setting aside this verdict and in awarding him a new trial. It should have overruled the motion of the plaintiff to set aside this verdict and award him a new trial, and should have entered up a judgment in favor of the defendant, in accordance with the verdict. Of course it follows, that the judgment of the court below in favor of the plaintiff rendered afterwards September 15, 1888, is erroneous, and both these judgments must be set aside, reversed and annulled; and the plaintiff in error, Louis Schwartz, (the defendant below) must recover of the plaintiff below (the defendant in error), Amos Gynn, his costs in this Court expended; and this Court must enter up such judgment for the defendant below, Louis Schwartz, as the court below should have entered.

REVERSED.