# CHARLESTON

## MAYS v. HINCHMAN.

### Submitted February 21, 1905.   Decided April 25, 1905.

1. EJECTMENT—*Courses and Distances—Monuments, Which Govern.*
   In fixing the boundaries of land from title deeds, the lines calling for ascertained corners must be run thereto though this may require a variation of both course and distance; but where a monument corner is called for which is not found, and the place where such monument stood cannot be satisfactorily ascertained, the course and distance called for must govern.  (p. 607.)

2. EJECTMENT—*Syllabus Approved.*
   Points 5, 6 and 7, of the syllabus in the case of *Gwynn* v. *Schwartz*, 32 W. Va. 487, and point 4 of the syllabus in the case of *Le Comte* v. *Carson*, 56 W. Va. 336, are re-affirmed.  (pp. 105, 106.)

Error to Circuit Court, Cabell County.

Action by Nicholas Mays against Adam Hinchman.  Judgment for plaintiff and defendant brings error.

*Reversed.*

C. W. CAMPBELL, and WYATT & HUTCHINSON, for plaintiff in error.

PEYTON & PERKINSON, W. P. DONAHOE, and GEORGE J. McCOMAS, for defendant in error.

Cox, Judge:

This is an action of ejectment. In 1867, the lands of John Morris, lying on the waters of Guyandotte river, were divided into lots and sold under decrees in a chancery proceeding. Lots Nos. 5 and 6 of this division adjoined. No. 5 contained one hundred and twenty-five acres, and No. 6 ninety-three acres. These lots were sold and conveyed to different purchasers under the decrees, and, by successive conveyances, were finally conveyed to Geo. F. Miller, Sr. After his death, his heirs conveyed lot No. 5, together with three acres, part of lot No. 6, to defendant, Hinchman, by deed dated 17th of March, 1893; and, by deed dated 19th of March, 1894, conveyed lot No. 6, reserving said three acres, to plaintiff, Mays. The deed to Mays described the divisional line between these lots as follows: "Beginning at a small elm on the bank of Guyandotte river, corner to lot No. 5 of the John Morris land, lying in the Bend of said Guyandotte river and with said Lot No. 5 N. 13 E. 220 poles to two small black oaks and a dogwood." The deed to Hinchman described the land conveyed by reference to other deeds, in which this divisional line was described in the same language used in plaintiff's deed. The location of this divisional line constitutes the controversy in this case. The monuments to this line, the elm at the beginning and the black oaks and the dogwood at the end, are gone. Much evidence was taken as to the places where these monuments stood. The difference in the location of this line, as claimed by plaintiff, and as claimed by defendant, makes a difference of about two and one-half acres of land. Plaintiff's declaration describes and demands the whole of Lot No. 6 by metes and bounds, excepting from the boundary a small strip on the North end of said tract of land, containing about three acres, more particularly described in a deed made by Geo. F. Miller and others to Adam Hinchman. Before trial the parties entered of record an agreement, whereby it was provided, among other things, "that the 3 acres, more or less, conveyed by D. I. Smith and others to Adam Hinchman by deed dated 17th day of February, 1893, and recorded in deed book No. 47 at page 57, and the three acres. more or less, reserved in the deed from D. I. Smith and others to Nicholas Mays dated the 19th day of March, 1894, and recorded in deed book No.

45 at page 235, is all that strip of land on the North end of Lot No. 6 of the Morris land, included between the North line of said lot No. 6 and the Southern line of the Edens' road, through the said Lot No. 6 so as to give all the said Edens road, and all the land North of said road, to the said Adam Hinchman, or in other words that the Northern boundary of the lands conveyed to the said Nicholas Mays follows the Southern line of the said Eden road from the East to the West line of the said Lot. No. 6." On the trial of this action, the jury found as follows: "We, the jury, find for the plaintiff the land mentioned and described in the declaration, and that the division line between the plaintiff and defendant is the line from "C" to "D" as shown on the surveyor's map herein, and we find the boundaries to be as follows: Beginning at the point "C," thence N. 15 45 E. 220 poles to the point "D" on said map, thence S. 70 E. 64 poles to a white oak, thence S. 9 45 W. 217 7-10 to a sycamore snag on the bank of Guyandotte river, thence down said river with the meanders thereof to the point of beginning. And we find that the plaintiff is entitled to a fee simple estate therein." This finding includes the whole of Lot No. 6, according to the trial map in this case. The defendant moved the court to set aside the verdict and award him a new trial, which motion was overruled and judgment entered in accordance with the verdict. Defendant excepted and afterwards obtained a writ of error and *supersedeas* from this Court:

It is contended that the verdict of the jury is erroneous. Notwithstanding the declaration does not demand the whole of Lot No. 6, and notwithstanding the parties, by an agreement entered of record, expressly admitted that the three acres, part of Lot No. 6, was owned by the defendant, and not by the plaintiff, and agreed as to the boundary line of said three acres, still the jury, by its verdict, gave to the plaintiff the whole of Lot No. 6, including the three acres. It is not necessary for us to determine whether or not the lower court, in the absence of any other error, could have entered judgment for all the boundary found except the three acres, as a new trial must be allowed for other reasons; but see *Gallatan* v. *Hay*, 4 W. Va. 1., *Chichester* v. *Boggess*, 5 Mun. 98.

The defendant complains of the rejection of certain documentary evidence offered by him, accompanied by an offer of oral evidence, and of the rejection of certain evidence tending to show acquiescence by former owners of the lots of land now owned by the parties to this action, as to the divisional line in controversy. The documentary evidence offered and rejected was a number of deeds of conveyance for these lots, preceding the conveyance to the ancestor of the common grantors of the plaintiff and defendant, and succeeding the division of the Morris land. These deeds form part of the chains of title of the plaintiff and of the defendant from Morris to the ancestor of their common grantor. It was proposed, in connection with the offer of these deeds, to prove that, immediately after the sale of the land in the Morris case, the parties claiming under these deeds, went upon the ground, ran the lines and marked the trees along the line, and that the trees so marked upon the divisional line between the plaintiff and defendant are still standing and bear the marks then made, and that the parties claiming under said deeds thereafter continually up to the time plaintiff bought the land claimed by him, claimed, cultivated and cleared the land and cut timber on both sides up to these line trees and recognized these trees as line trees. Evidence tending to show a valid oral agreement between prior owners of lands through whom the parties hold as to the location of the divisional line between such lands is admissible. Likwise, evidence tending to show acquiescence by prior owners as to the location of the divisional line from which such valid oral agreement may be inferred is admissible. In the case of *Gwynn* v. *Schwartz*, 32 W. Va. 487, it is held that: "Disputed boundaries between two adjoining lands may be settled by express oral agreement, executed immediately and accompanied by possession according thereto;" that "Long acquiescence by one adjoining proprietor in a boundary established by the order is evidence of such agreement so fixing the division-line between them;" and that "Such acquiescence may be shown by the adjoining land owners having actual possession and cultivating to such line; or, if the line run through woods, by the proprietor, who established such division-line, with the knowledge of the adjoining land-proprietor always clearing up to this line and, with his

like knowledge cutting timber and peeling bark up to this division, the other land owner making no objection to such claim or such act of ownership, though he was present when such acts were being done." In the case of *Le Comte* v. *Carson, et al*, 56 W. Va. 336 (49 S. E. 238), it is held that: "To make valid an oral agreement to fix a line between two contiguous tracts of land, there must be doubt and uncertainty as to the true place of the line; else the agreement is void. Where there is, in fact, under the facts, such doubt and uncertainty, such oral agreement, if at once carried into execution by actual possession, is valid, without other consideration than the settlement of disputed boundary." See also 5 Cyc. 932, *note* 49. Before evidence tending to show a valid oral agreement between prior owners, or such acquiescence by them from which such an agreement may be inferred, can be introduced, it must be shown that they were prior owners and the best evidence is their title deeds. It is clear, therefore, that these deeds should have been admitted, together with any proper evidence tending to show such valid oral agreement as to the location of the line in controversy, or tending to show such acquiescence from which such agreement might be inferred. Plaintiff claims that such evidence was not admissible as to owners preceding the ancestor of the common grantors. It is true that, after the titles to Lots Nos. 5 and 6 were united in the same person, his possession of one was not adverse to his possession of the other. The question here is one of location. The common grantors, when they conveyed these lots separately to plaintiff and defendant described this divisional line in plaintiff's deed in the same language used in the former deeds, and, in defendant's deed, referred to such former deeds in the description of this line. The conclusion seems inevitable that, by the deeds to plaintiff and defendant, the common grantors intended to preserve the integrity of this divisional line as it existed when these lots came to their ancestor and as conveyed to him. Upon like principle, we think it was proper to admit the title bond mentioned in bill of exceptions No. 4.

Defendant objects to Instruction No. 2, given for the plaintiff. It is as follows: "The court further instructs the jury that if they find from the evidence, facts and circum-

stances in this case that the elm corner called for at the river and the two black oaks and dogwood called for are missing and cannot be satisfactorily located on the ground, that then the true corner should be located by the courses and distances set forth in the deed." We take it that the phrase "cannot be satisfactorily located" means that the place where the monument stood cannot be satisfactorily located. This instruction, we think, properly propounds the law in a case where the line is to be ascertained from the title deeds alone, and where there is no valid agreement as to the location of such line and no such acquiescence from which such an agreement can be inferred. We understand it to be the law that, in fixing the boundaries of land from title deeds, the lines calling for ascertained corners must be run thereto, though this may require a variation of both courses and distance; but where a monument corner is called for which is not found, and the place where such monument stood cannot be satisfactorily ascertained, the course and distance called for must govern. *Clements* v. *Kyles*, 13 Grat. 468. Unquestionably, the word "satisfactorily," as used in this instruction, meant satisfactorily to the jury trying the case and considering the evidence, facts and circumstances appearing.

As this case must be remanded for a new trial, we shall not discuss the question of whether or not the evidence was sufficient to sustain a verdict in favor of the plaintiff; and we do not express any opinion as to that matter.

For the reasons stated, the judgment of the circuit court of Cabell county, entered in this action on the first day of April, 1902, is reversed, the verdict of the jury set side and a new trial awarded to the defendant, and this case remanded to be further proceeded with.

*Reversed.*