Spencer, Ch. J.,
delivered the opinion of the court. The plaintiff’s counsel seem to suppose that the lessors of the plaintiff had a priority of title, and were, therefore, entitled, at all events, to have the complement of acres mentioned in the patent for lot No. 104. This is manifestly a mistake. The owners of the tract would have been tenants in common, but for the partition which took place between them. The patents were issued on the mutual agreement of those interested in the whole tract, to sever their common rights ; and thus the agreement was carried into complete effect. As between the tenants in common, it was -immaterial when the patents were dated, they became entitled to the lots in severalty, in virtue of their agreement, and it was perfected by issuing the letters patent.
*36 ■The real question is, Which shall prevail, the actual location of the lots on the ground, by marking and numbering trees at the comers, and by marking the lines of the lots; or the courses and distances which the map represents the lots as entitled to?
The survey of the lots, and the actual location of them, was the joint act of all the parties interested, and must control. The map was intended to represent the relative! situations and localities of the lots, as regarded each other: the actual survey was the practical location; and although the patents do no. specially refer to the field book and the actual survey of the lots, they virtually referred to them, by referring to the map. It was composed from the survey, and the lots acquired their individuality from the survey also. Without, therefore, any express reference to the field book or survey, the reference to the map was a reference to its accompaniments, the field book and survey. In Jackson v. Ogden, (7 Johns. Rep. 241.) Chief Justice Kent, in delivering the opinion of the court upon a question involving one of the lots in this tract," said, “ that when the question was rendered ambiguous or uncertain, by the contradiction between the map and survey, a practical location and construction given by the parties, and acquiesced in ^through a series of transfers, and for a great number of years, until the lands had become cultivated and grown into value, cannot but operate with great, if not decisive, force."’ Those observations apply, with peculiar weight, in the present case; for all the lots, with the exception of three, which have been quite recently entered upon, have been held and possessed ever since the settlement of the country, according to the original and actual survey of the lots.
To locate lot No. 104. according to the map, and rejecting all that has been done by the patentees themselves to give fixed and definite boundaries to the lots, would throw every lot in the whole tract into a state of confusion. We are bound, as well by a regard to the quiet of the country, as to the acts of the parties, to hold them concluded by their actual location of the lots, without being influenced by the consideration, that some lots fall short, and others exceed the number of acres mentioned in the patents. This was matter of accident, and the patentees took their chances for the lots on the ballot.
We have been referred to a decision of this court in May term, 1811, in the case of Jackson, ex dem. Kortright and others, v. Reid, conforming to the principles now adopted; and although that case is not reported, it undoubtedly was decided in consonance with this case, (a)
Motion for a new trial denied, with costs.

 See Jackson, ex dem. Johnson and others, v. Talmadge, 4 Cowen, 160. Jackson, ex dem. Smith, v. Marsh, 6 Cowen, 281. Ex parte Jennings, ibid. 518. 636. 679.