## WILEY SNEED v. J. W. OSBORN.

BOUNDARY LINES OF LAND SOLD.—If the description in a deed is uncertain, the grantor and grantee may agree upon and establish the boundary line between the land granted and the remaining lands of the grantor, and such agreement will be binding upon the parties; but to be effectual, it must be done while the parties own the lands on both sides of the lines they thus locate.

DIVISION LINES BETWEEN ADJOINING TRACTS OF LAND.—When the owners of adjoining lands have acquiesced for a length of time, equal at least to the length of time prescribed by the Statute of Limitations to bar a right of entry in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line.

LEGAL TITLE TO LAND.—A party holding land dependent on a division line established between contiguous owners by their acquiescence for the time prescribed by the Statute of Limitations as a bar to an action for the recovery of real property, holds it by a legal and not an equitable title.

OBJECTION TO EVIDENCE.—Where the objection made to testimony is that it is incompetent and illegal, without a specification of the point of incompetency or illegality, it is the duty of the Court to overrule it if it is admissible for any purpose.

EVIDENCE TO PROVE BOUNDARY LINES.—The declarations of the owner of a tract of land are not admissible in evidence for the purpose of proving its boundary lines, if made when he is not in possession.

APPEAL from the District Court, Seventh Judicial District, Napa County.

The facts are stated in the opinion of the Court.

*Williams & Thornton*, for Appellant.

*The agreed location must control, and should prevail.*

The authorities on this point are clear and conclusive. The first case to which we call the attention of the Court is *Adams* v. *Rockwell*, 16 Wendell, 285–302, decided by the

Court of Errors of the State of New York. In that case Chancellor Walworth thus states the rule, in case there could be no real doubt as to how the land should be located according to the limits described in the deed. He says:

"Where there can be no real doubt as to how the premises should be located, according to certain and known boundaries described in the deed, to establish a practical location different therefrom, which shall deprive the party claiming under the deed of his legal rights, there must be either a location which has been acquiesced in for a sufficient length of time to bar a right of entry under the Statute of Limitations in relation to real estate, *or the erroneous line must have been agreed upon between the parties claiming the land on both sides thereof*, or the party whose right is to be thus barred must have silently looked on and seen the other party doing acts, or subjecting himself to expenses in relation to the land on the opposite side of the line, which would be an injury to him, and which he would not have done if the line had not been so located; in which case, perhaps, a grant might be presumed within the twenty years."

The rule we refer to we have given in the above extract, *in italics.*

In the case of *McCormick* v. *Barnum*, 10 Wendell, 104, the Court say:

"Cases of this description" (referring to cases of location) "have been frequently before the Court. The principle upon which they have all been decided is, that where parties agree upon a division line, *either expressly, or by long acquiescence,* such line shall not be disturbed; buildings and permanent improvements may be made upon the faith of the location of the line; transfers may be made, and to permit such lines to be altered might be productive of incalculable injury."

In *Jackson* v. *Corlear*, 11 Johns. 123, the Court say: "After the parties have *deliberately settled* a boundary line between them, it would give too much encouragement to the spirit of litigation to look beyond such settlement, and break up the line *so established* between them."

In *Perkins* v. *Gay*, 3 Serg. & Rawle, 132, the defendant had given evidence of an agreed line of boundary, styled by the Court "a consentable line." The Court, by Gibson, J., thus expressed itself with reference to this line :

"The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he gives up for the sake of peace something to which, in strict justice, he is entitled. There is an express mutual abandonment of their former rights, upon an agreement that whether they be good or whether they be bad, neither is to recur to them on any pretense whatever, or claim anything that he does not derive from the terms of the agreement. Each takes his chance of obtaining an equivalent for everything he relinquishes, and if the event turn out contrary to his expectations, so much the worse for him. If there be no intention of fraud, no unfair dealing, and neither party has more knowledge of the fact misconceived than the other had, the contract will bind."

The ruling is the same in *Hagey v. Detweiler*, 35 Penn. 412, 413 ; see, also, 1st Hening and Munford, 177 ; 4 Id. 125.

But it is said that Harrison was no party to this agreement as to the boundary line, and therefore it is not binding.

In reply to this we say : By reference to the deed of Harrison, it will be seen that its *northern* boundary is the *southern* boundary of the Boggs tract. The language used is this: "one square mile, or six hundred and forty acres, bounded on the north by a certain tract of one square mile, which the said Vallejo sold to L. W. Boggs, by deed bearing date the 19th day of March, A. D. 1847." The location of the Harrison tract is then dependent on that of the Boggs tract. The former cannot be ascertained until the location of the latter is ascertained and determined. Until the Boggs tract is located, the Harrison tract cannot be. The title, then, of the Harrison tract remains in the grantor, Vallejo, and does not pass out of him until the location of the Boggs tract. The evidence further shows that Vallejo owned the land surrounding both the Boggs and Harrison tracts. Vallejo is the grantee of the *"Rancho de Napa,"* of which these two tracts formed a part,

and D'Hemecourt's map of the said rancho shows that it surrounded the tracts above mentioned. Vallejo was then an adjoining owner with Boggs, and was competent to enter into an agreement fixing the boundary line.

The declarations deposed to are those of an interested party, not in possession; the witness testifies that he was himself in possession.

The authorities go to this extent only, that the declaration of a party in possession as to the character of his possession, whether in his own right, or for another, are admissible as part of the *res gestæ*. But such declarations cannot be admitted, until *a possession has been established* of the party whose *declarations are offered in evidence*.

In this case the declarant was not in possession, the tract was entirely uninclosed, and its virgin soil had never been disturbed by a single furrow.

The following authorities are referred to:

*McBride* v. *Thompson*, 8 Ala. 652; *Abney* v. *Kingsland*, 10 Id. 358, 359; *West* v. *Price's Heirs*, 2 J. J. Marshall, 380, 383; *Jackson* v. *Vredenburgh*, 1 Johns. 158; *West Cambridge* v. *Lexington*, 2 Pick. 536; 3 Phil. Ev. C. & H.'s Notes, 217, 218, 219.

*Whitman & Wells*, for Respondent.

It will be remembered that the survey of the Boggs tract was made after the execution and delivery of the Harrison deed. By the delivery of that deed Harrison acquired rights which could not be varied or annulled by any agreement between Boggs and Vallejo. His deed called for the Boggs tract as his northern boundary. What Boggs tract? The tract described in the deed; not any other tract which might be agreed upon by way of compromise between Boggs and Vallejo. It will be remarked that Harrison was not present at the survey, nor is it pretended that he ever agreed to or knew of the arrangement between Boggs and Vallejo.

Harrison was entitled to have the survey made according to the calls of the Boggs deed, for thus it became a feasible thing.

We contend in the first place, that the survey was thus practicably made on the ground.   Second, if not so made, that the starting point being ascertained, the survey therefrom extended shows that the defendant has twenty-four acres of that land in possession; and even admitting that a variety of surveys may be made legitimately from the ascertained starting point, still, where there may be a difference of construction or application, we have the right to the election.   (*Jackson* v. *Hudson*, 3 J. R. 374; *Saun* v. *Blodgett*, 16 J. R. 172; see, also, to the prior points suggested: *Luce* v. *Carley*, 24 Wend. 451; *Jackson* v. *Wendell*, 5 Wend. 142; *Bates* v. *Tymason*, 13 Wend. 300.)


By the Court, RHODES, J.

On the 19th of March, 1847, Salvador Vallejo conveyed to L. W. Boggs one square mile of land in Napa Valley, bounded as follows: " Beginning at a point near the base of the mountain on the west side of Napa Valley, one half a mile in a southerly direction from where a small branch or brook enters the valley from the mountains, usually known as the Old Rhodare; thence running from the said point of beginning along a line parallel with the base of the mountains, in a northerly direction one mile; thence forming a right angle and running in an easterly direction one mile; thence making a right angle and running in a southerly direction one mile; thence making a right angle and running in a westerly direction one mile to the point of beginning."

Vallejo conveyed to Harrison, on the 5th of April, 1847, one square mile of land, the only description of the boundaries being as follows: " Bounded on the north by a certain tract of one square mile, which said Vallejo sold to L. W. Boggs, by deed bearing date the 19th day of March, A. D. 1847." Subsequent to the deed, and about the last of April of the same year, Vallejo and Boggs went on the land, and caused a survey of the same to be made by Surveyor Ide, who set stakes at the southeast, the northeast and northwest corners,

and directed the parties where to set the stake at the south-west corner, at a certain distance north of where he had set the stake for the first station; and the southern, eastern and northern lines were marked.    The position of the initial point is uncertain.    Probably no two men would take the deed, and going on the land separately, fix upon the same place for the initial point, for the place where the creek enters the valley— the line where the hills terminate and the valley begins—is difficult of ascertainment, there being a gradual slope of the hills to the valley; and the "Old Rhodare," which the parties understood to mean rodeo grounds, is a tract which may include from a few acres to five hundred acres.    In view of this uncertainty, the parties went on the land for the purpose of establishing the lines, and in the first place agreed upon a certain tree on the bank of the creek, as the initial point; but on the surveyor measuring thence south half a mile and setting the first station and running from thence the southern line, the parties, after some controversy as to the land to be included, agreed. that the first station should be set to the north such a distance, that the southern line should not cross Dry Creek.; and the lines were run and marked and corner stakes were set accordingly, the western line not being actually run or marked, but directions being given for setting the stake at its southern extremity, so as to accord with the southern line as run.

At the time of the sale to Boggs, Vallejo owned the land adjoining the Boggs tract and the land adjoining the Harrison tract, and there can be no doubt, upon principle or authority, that under such circumstances, and considering the uncertain description of the deed, it was competent for the parties to locate the land, and establish the boundary lines between the tract conveyed and the remaining lands of the grantor.    This could be done by them while the grantor owned the adjoining land, and the lines thus fixed would be regarded as division lines established by the agreement of coterminous proprietors. To be effectual for any purpose, it must be done while the parties own the lands on both sides of the line they thus locate. If the square mile sold to Boggs had contained all the lands

that Vallejo owned in that place, Vallejo, after the sale of it, would have had no greater control over the location of the land than a stranger to the title.

Harrison did not participate in the Ide survey, and there is no evidence in the record, showing that he assented to or acquiesced in it in any manner. He owned the land south of the Boggs tract at the time of the survey, and was unaffected by any agreement respecting the lines of the Boggs tract, to which he was not a party.

In 1852, the northwest quarter of the Harrison tract was conveyed to the respondent, and in 1853, there was conveyed to the appellant all of the southwest quarter of the Harrison tract, except ten acres in the northeast corner of the southwest quarter, which had been conveyed in 1852 to McNiel, who conveyed the same to the respondent in 1857. The respondent is in possession of the northwest quarter and the ten acre tract, and the appellant is in possession of the southwest quarter less the ten acre tract, measuring the land from the southern line of the Ide survey as the base.

The respondent now claims that the Ide survey was incorrect ; that the southern line was run about six chains too far to the north ; that upon the Harrison tract being surveyed and subdivided according to the true southern line of the Boggs tract, the northwest quarter and the ten acre tract will include two parcels of land within the northern part of the southwest quarter, as claimed and occupied by the appellant, of the width of six chains, and both together extending across the southwest quarter, and containing twenty-four acres. He sued to recover the possession of the northwest quarter and the ten acre tract, and the Court found for him, and gave judgment for the possession of the premises sued for.

What we have already said indicates that we agree with the appellant in his first and second propositions, but that his third proposition, viz: that "the agreed location must control, and should prevail," cannot be maintained, because there is no evidence that Harrison or the plaintiff or those through whom he claims, joined in running the line in controversy,

or at the time it was run, directly assented to it, as established by the Ide survey.

There is another consideration applicable to a part, at least, of the case, that counsel have not particularly urged, but which is of too much importance to be passed over without notice. In eighteen hundred and fifty-four, while McNiel was the owner of the ten acre tract, and the appellant owned the residue of what he claims as the southwest quarter, the appellant directed a survey to be made of the ten acre tract, so that he might know where to build his fences, and the survey was accordingly made. It does not appear whether or not McNiel was present, but he soon after the survey built his fences on the land as surveyed, and thereafter occupied the land until he sold it to the respondent, who since that time has held it as fenced by McNiel, and the appellant has since the survey held the land adjoining it on the south and west. The record contains no evidence of any objection being made by McNiel or the respondent, to the lines of the ten acre tract as surveyed and fenced, from the time of the survey to the commencement of this action in eighteen hundred and sixty. The acts of the parties might not amount to an agreement between them, to locate the tract as then surveyed, and it is unnecessary to consider them in that view; but do they not show an acquiescence by the parties in those lines as the division lines between the two tracts of land? If they do show such acquiescence it will make no difference in the result that they acted in ignorance or under a mistake, as to the true northern line of the southwest quarter of the Harrison tract. The authorities are abundant to the point that when the owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line. The better opinion is that the considerable time mentioned in the cases must at least equal the length of time prescribed by the Statute of Limitations to bar a right of entry. (*Jackson* v. *Ogden*, 7 Johns. 238; *Jackson* v. *Freer*,

17 Johns. 29 ; *McCormick* v. *Barnum*, 10 Wend. 104 ; *Dibble* v. *Rogers*, 13 Wend. 536 ; *Adams* v. *Rockwell*, 16 Wend. 285 ; *Van Wyck* v. *Wright*, 18 Wend. 157 ; *Boyd's Lessees* v. *Graves*, 4 Wheat. 513.)   There was sufficient evidence in the case to have justified the Court in finding that the parties and the respondent's grantor had acquiesced in the practical location of the lines of the ten acre tract in such a manner and for such a time that they cannot now deny that those lines are the true division lines between their respective lands ; and there being no conflicting evidence upon this point, the Court should have found for the appellant as to the ten acre tract.

The evidence bearing upon this point, so far as it relates to that portion of the division line extending westerly from the ten acre tract, is very slight and unsatisfactory, arising probably from the reason that the case was not presented in the Court below in view of the proposition that we have been considering.   And for the same reason, we do not undertake to say that the respondent has presented all his evidence, or fully made his case on this question, in regard to the ten acre tract.

The appellant makes a further point that the Court erred in admitting the testimony of H. C. Boggs, concerning the declaration of Governor Boggs as to the boundaries of the Boggs tract, and we think it well taken.   The objection was general —the ground being that it was incompetent and illegal testimony—and it would be the duty of the Court to overrule an objection thus taken, if the evidence was admissible for any purpose.   The party objecting should lay his finger on the point of objection.   (*Martin* v. *Graves*, 12 Cal. 243, and cases cited.)   But here the witness stated that Governor Boggs was not then in possession of any of the land, and for that reason his declarations were not competent as evidence.   (1 Phil. Ev. C. H. and E.'s Notes, 194, note 81.)

The respondent contends that the admission of that evidence did not amount to an error, because the Court, in passing on the motion for a new trial, disregarded the evidence as immaterial.   Such in fact was the case ; but it was done by the

Court, on the theory that Vallejo and Boggs still adhered to the tree at the creek, as the initial point, and on which the location was made to depend, notwithstanding that on their running the southern line they agreed that the first station, as set for the southwestern corner, should be moved several chains north of where it was set, on measuring southerly the half mile from the tree ; and that all the lines were run and marked and the corners established in view of the fact, that the first station had thus been moved to the north.    The evidence of the declarations of Governor Boggs might very properly be disregarded as immaterial, if it could be held that the initial point had been permanently fixed as contended for ; but the whole survey contradicts the idea that the parties still regarded that as the initial point—and, in fact, the Ide survey could not have been made as it was, by beginning at the marked tree at the creek as the initial point.    We cannot say that the Judge who tried the case disregarded this evidence because it was immaterial, or if so, that it was done for the same reason that the Judge who refused the new trial disregarded it ; but if the cause was determined at the trial upon the theory announced, in deciding the motion for a new trial, the finding cannot be sustained, for the theory amounted in substance to the doctrine that Harrison, while holding his deed from Vallejo, was bound by the acts of Vallejo and Boggs in assuming and fixing upon the initial point—and a point, too, that was immediately abandoned by them, in running and making the lines and locating the corners.

Judgment reversed, and the cause remanded for a new trial.


By the Court, RHODES, J., on petition for rehearing.

The respondent, in his petition for a rehearing, suggests that we have mistaken the evidence in several points, but we have carefully examined the record, and we think we correctly understand the facts of the case.    Facts are stated, in the opinion of the Court, solely that the course of reasoning adopted by the Court, and the principles enunciated, may be

the better understood.   The Court does not assume to find the facts in a case, for it has no authority to do so, except in case where an ultimate fact results, as a conclusion of law, from the proof of certain prior facts.   If this Court states the evidence in a cause, whether correctly or incorrectly, the statement in no manner controls the Court below, and cannot prejudice the parties, where a new trial is had.   It is upon questions of law, that the decision of the appellate Court becomes the law of the case, and not upon questions of fact.

We are of the opinion, from the evidence in the record, that the act of Vallejo and Governor Boggs, in the absence of Harrison, in fixing upon the initial point, did not and could not affect the location of the Harrison tract, and we are further of the opinion that, as a fact in the case, the Ide survey, as made and marked on the land, was inconsistent with the first intention of the parties, in taking the tree as the initial point, and, in effect, removed the initial point to a position north of the tree.

But it is immaterial where they fixed the initial point, for the northern line of the Harrison tract coincided with the southern line of the Boggs tract, as it must be ascertained and run, according to the deed, without regard to how Boggs and Vallejo may have run it.   After the initial point is established, a line one half mile in length must be run therefrom, south, to find the southwest corner of the Boggs tract, and the southern line must run from that corner, at right angles with the western line, as described in Boggs' deed from Vallejo.   If the parties owning the land on both sides of the true line, have established another line, by a valid agreement, or by an acquiescence, such as we have before indicated, that line will govern the parties and their vendees.

The respondent objects that the facts relating to the acquiescence in the lines of the ten acre tract cannot be considered in this case, because those acts, if amounting to anything, create an equitable estoppel, and the appellant has failed to plead the estoppel.

The objection would be well taken, if it is a correct princi-

ple of law, that the parcel of land, cut off from the lands of the coterminous proprietor, by the division line established by long acquiescence of the two parties, is held by an equitable title. The Courts often say that it would be inequitable for the parties, after such long acquiescence in a partition line, to set up another, as the true line, according to the calls of their respective deeds—that they are estopped from making such proof; but it is not meant thereby that either party holds by an equitable title, or that title accrued to him by estoppel. It is said in other cases that after a long acquiescence in a division line, varying from the true line, the Court is authorized to presume a grant of the excess, (see *Adams* v. *Rockwell*, 16 Wend. 285,) but it is unnecessary to presume anything more than an agreement upon the division line, for the one party does not purport or attempt to sell or convey to the other any land; nor does the other set up any right under a purchase or conveyance of the legal or equitable title, made at the establishment of the division line. The division line when thus established, attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands · described in each deed, in accordance with the understanding of the parties, who are presumed to know best their lands; and if by a mistake of the parties, one deed is in that manner made to include more than the calls of the deed would actually require, the grantee of the deed holds the excess by the same tenure that he holds the main body of his lands. This principle is well expressed by Judge Ryland in *Blair* v. *Smith*, 16 Mo. 273. He says: "We consider this case thus: Two owners of contiguous lots or tracts of land, each having his deed for his lot or tract, agree with the other: We fix this mark on the earth's surface as the line called for in my deed; this mark as the line called for in your deed; here is the line between us. My land mentioned in my deed comes up to this mark, or this fence, or this wall, on this side, and your land comes to the same on that side.    *    *    Such boundary thus agreed upon shall be considered the true one, and each one considered as the owner of the land mentioned in his deed, thus

marked out to that boundary between them." In *Jackson* v. *Ogden*, 4 Johns. 142, Mr. Justice Spencer, in speaking of the acts of one of the lessors of the plaintiff, says : " It is not, however, to be controverted that parties whose rights to real property may be perfect, and the boundaries of which may be susceptible of certain and precise ascertainment, may by their acts conclude themselves by establishing other and different boundaries." .

The same doctrine is announced in several of the cases cited in the opinion delivered in this case. In *Boyd's Lessee* v. *Graves*, 4 Wheat. 413, it is said, in commenting upon the fact that a dividing line had been run by a surveyor, by agreement of the parties, more than twenty years previous to the commencement of the action, that the agreement was not a contract for the sale or conveyance of lands and had no ingredient of such a contract.   In the Courts of Pennsylvania it is held that " adjoining owners who adjust their partition line by parol, do not create or convey any estate whatever between themselves ; no such thought or intention influences their conduct ; after their boundary is fixed by consent, they hold up to it by virtue of their title deeds, and not by virtue of a parol transfer." (*Hagey* v. *Detweiler*, 35 Penn. 409 ; *Perkins* v. *Gay*, 3 Serg. and Rawle, 331.)

. The party holding land, dependent on a division line established between contiguous owners, by their acquiescence for a space of time equal to the time prescribed by the Statute of Limitations, as a bar to an action for the recovery of the possession of real property, holds it by legal title.

Mr. Justice SAWYER expressed no opinion.