Filed 12/17/25  Saeid v. Hatami CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ZAMANIEH SHAHRI SEYED SAEID, | C101811 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-70008378-CU-HR-GDS) |
| v. | |
| HENGAMEH HATAMI, | |
| Defendant and Respondent. | |

Plaintiff and appellant, proceeding as a self-represented litigant, appeals from an order (1) denying his request to renew a civil harassment restraining order against defendant and respondent and (2) awarding respondent $8,000 in attorney fees and costs. Finding no error, we affirm in full.

1

**BACKGROUND**

In July 2021, appellant and his wife obtained civil harassment restraining orders against respondent pursuant to Code of Civil Procedure section 527.6.  Respondent appealed, and we affirmed in an unpublished decision issued in 2023.  (*Z.S. v. H.H.* (Apr. 27, 2023, C094845, C094846, C094847, C094848).)  We will refer to this as the prior appeal and the prior decision, to differentiate it from the current appeal and the current decision.  We note our prior decision was based largely on the fact that the record did not contain a reporter's transcript or an agreed or settled statement, and we thus had "no alternative but to fall back on the presumption that the superior court's orders are correct."

The restraining orders expired on July 1, 2024.  On June 27, 2024, appellant filed a request to renew the order.[1]  Attached to the request was a 20-page, single-spaced statement of "reasons to renew" the order, along with 48 exhibits totaling approximately 300 pages.  Much of the statement simply described and/or repeated the allegations that led to the issuance of the July 2021 order.  Appellant also stated, however, that respondent continued to harass him and his wife *after* the orders were issued, and he identified the following incidents of continuing harassment:[2]

1.      In August 2021, respondent gave "false, fake, fabricated and altered documents" to the United States Citizenship and Immigration Services (USCIS), which caused USCIS to "unlawfully procrastinate[]" on appellant's naturalization process.

---

[1]      His wife filed her own separate request as well, but her case is not before us.

[2]      There were others, but we focus on the incidents appellant discusses in his opening brief.

2

These documents do not appear to be part of the record, and we thus have no information about them.[3]

2.      In June 2024, appellant received a text message via WhatsApp from someone named Hossein Zamanian that stated the following: "If you apply to request to renew those civil harassment restraining orders against [respondent], you will be killed in America wherever possible, in your workplace, [g]ym or your house. [B]esides that, your family will be killed in Iran." The text contained pictures and addresses of appellant's home, workplace, and gym. Appellant stated Zamanian is respondent's cousin, and he believed it was actually respondent who sent the text "through" Zamanian.

3.      In July 2022, appellant found his mailbox door open, and he believed it was opened by an "Afghan guy" named Mayen who did maintenance work for the apartment complex he lived in. Appellant stated Mayen is respondent's cousin, and the implication is appellant believed Mayen opened appellant's mailbox at respondent's behest.

4.      In 2021 and 2022, respondent caused the Rostami family to harass and threaten him. The Rostamis are (or were) appellant's neighbors, and in 2022, appellant and his wife filed a request for a civil harassment restraining orders against them (we refer to this case as the Rostami case). The request was denied, and we affirmed the denial in an unpublished opinion issued on September 30, 2024.[4] (*Sayyedalhosseini v. Rostami* (Sept. 30, 2023, C097939, C097940).) In appellant's current request to renew the restraining orders against respondent, he recounted the four incidents that were the subject of the Rostami case. Appellant believed respondent was behind the Rostamis'

---

[3]    The record does contain a document that respondent allegedly provided to USCIS in 2016, but that does not appear to be one of the documents appellant claims respondent gave to USCIS "*on August 2021* in retaliation of those 4 CHRO to continue her harassment."

[4]    On the court's own motion, we take judicial notice of our prior opinion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

actions, or as he puts it in his opening brief, "[respondent] and Rostami family are on one team to harass us."

Respondent filed an approximately 90-page response to the request, arguing it was based on unsubstantiated and false allegations. She submitted a declaration stating she had had no contact with appellant or his wife in the past three years except for one incident in December 2022 when she was signing up for membership at a gym and appellant approached her and shouted he had a restraining order, which caused her to run out of the gym. She also stated she had no familial relationship with appellant's "apartment maintenance person" (i.e., Mayen) and she never instructed him or anyone else to break into appellant's mailbox. Mayen submitted a declaration stating he was not related to respondent, he never broke into appellant's mailbox, and appellant had spat at him several times in the past year. Hossein Zamanian submitted a declaration stating he lived in Iran, he had never visited the United States, he did not send the WhatsApp text to appellant, and the text must have been fabricated. Respondent's attorney submitted a declaration stating she had asked appellant to provide authentication for the WhatsApp text and to have his cell phone available for inspection at the hearing. Benjamin Rose, an expert in "digital evidence," submitted a declaration stating he stood ready to authenticate the WhatsApp text message on appellant's cell phone. And Rostam Rostami submitted a declaration stating appellant had harassed him for years, which had ultimately forced him to move. In addition to opposing the request to renew the restraining order, respondent also sought attorney fees and costs pursuant to Code of Civil Procedure section 527.6, subdivision (s), and her attorney submitted a declaration stating (1) she charged $350 an hour and had spent 19 hours on the case, totaling $6,650 in attorney fees, and (2) respondent had incurred $1,700 in costs.

Appellant filed a nearly 370-page "opposition" to respondent's response. Among other things, appellant argued an award of fees and costs was not appropriate because he

4

had very low income as evidenced by the fact that the court had granted him a fee waiver and he qualified for federal housing assistance.

Prior to the hearing, respondent filed a motion in limine to exclude the WhatsApp text on the ground it was not authenticated, and appellant filed an "opposition and objection" to the motion in limine.  Appellant also filed an almost 100-page request asking the court "to issue Judicial Notice against [respondent's attorney] because of his violations" which "disturbed our peace, compromised our privacy, offended us and misled Police Officer."  (Underlining omitted.)

A hearing on the request to renew the restraining order was held August 2, 2024, and according to a minute order, appellant and respondent were both "[p]resent and [s]worn."  The minute order stated the request to renew the restraining order was denied, and the "request for attorney's fees . . . in the amount of $6,500 in fees and $1,500 in other costs" was granted.  The minute order also stated, "A copy of the Order was provided to both parties in open court," and, "No further service is needed."  There was no court reporter present, and this minute order is thus the only documentation we have of the hearing and the trial court's decision.

On August 5, 2024, appellant filed a notice of appeal.[5]

## DISCUSSION

### 1.      Denial of the Request to Renew the Restraining Order

#### A.      *Relevant Law and Standard of Review*

Code of Civil Procedure section 527.6 (hereafter section 527.6) "provides for

---

[5]      On the same date he filed a notice of appeal, appellant also filed (1) a posttrial brief to "protest" the hearing, the order, and the judge who presided over both, and (2) a misconduct complaint against the judge with the Commission on Judicial Performance.  After the notice of appeal was filed, the parties filed dueling motions to declare the other a vexatious litigant.  The trial court ultimately denied both motions.  The posttrial brief, the complaint against the judge, and the dueling vexatious litigant motions are not at issue here, and we thus do not discuss them further.

'expedited injunctive relief to victims of harassment.' [Citation.] The statute enables a person who has suffered harassment—defined by the statute as 'unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose'—to 'seek a temporary restraining order and an injunction prohibiting harassment . . . .' (§ 527.6, subds. (a)(1), (b)(3); see *id*., subd. (b)(1), (6)(A).) 'The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress . . . .' (§ 527.6, subd. (b)(3).) [¶] A trial court generally must hold a hearing on a section 527.6 petition within 21 days of the court's grant or denial of a temporary restraining order. (§ 527.6, subd. (g).) At the hearing, the trial court 'shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment.' (§ 527.6, subd. (i).) The court need not make express findings, but rather, 'the granting of the injunction itself necessarily implies that the trial court found that [the respondent] knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed or harassed [the petitioner].' " (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 88-89 (*Cooper*).)

As relevant here, section 527.6, subdivision (j)(1), provides a restraining order "may be renewed, upon the request of a party, for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order." Because section 527.6 "expressly states" that an order may be renewed without a showing of any further harassment since the issuance of the original order, "the trial court may rely solely on the record in the original case." (*Cooper, supra*, 242 Cal.App.4th at pp. 90-91.) "Indeed, it would be 'anomalous to require the protected party to prove further [harassment] occurred in order to justify renewal of [the] original order. If this were the standard, the protected party would have to demonstrate the initial

6

order had proved ineffectual . . . just to obtain an extension of that ineffectual order.' "
(*Id.* at p. 91.)

Although a showing of further harassment is not required, "renewal under section 527.6, subdivision (j)(1) is not automatic; instead the trial court has discretion whether to renew the restraining order and the duration of the restraining order." (*Cooper, supra*, 242 Cal.App.4th at p. 89.) In *Cooper*, the court addressed "the proper standard for the trial court to apply in exercising its discretion," and concluded as follows: "Generally, '[i]njunctive relief will be denied where, at the time of the order or judgment, no reasonable probability exists of the recurrence of the past acts. An injunction should not be granted as punishment for past acts where it is unlikely that they will recur.' [Citations.] Thus, *a restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future.*" (*Id*. at p. 90, italics added; see also *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 ["An injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future"].)

We review the trial court's decision on a request to renew a restraining order under the abuse of discretion standard. (See *Cooper, supra*, 242 Cal.App.4th at p. 90.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) "The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Id*. at pp. 711-712, fns. omitted.)

The standard of review in this case is impacted by appellant's failure to provide us with a record of what happened at the hearing before the trial court. It is a "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record

7

presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' " " " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) Because a judgment or order is presumed correct, " 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) And again: " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson*, at p. 609.)

As a general rule, "A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.) Rule 8.120(b) of the California Rules of Court provides: "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or (3) A settled statement under rule 8.137." Here, no reporter's transcript exists because there was no court reporter present at the hearing, and appellant has not provided us with either an agreed statement or a settled statement. This appeal is thus based solely on the clerk's transcript.

"Although in certain instances a reporter's transcript may not be necessary, including if an appeal involves a legal issue requiring de novo review [citation], on issues

8

such as the instant one involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable." (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79.) "The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion." (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448.) " 'It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics omitted.) "[A]n appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid.*)

As we explain in the next section, these rules are dispositive in this case, because with no record of what happened at the hearing, appellant has failed to provide us with "any evidentiary basis whatever for attacking the trial court's rulings." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 522.) Moreover, these rules apply to appellant even though he is representing himself. "A self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S. v. Kroutik, supra*, 247 Cal.App.4th at p. 574.)

Appellant never mentions the lack of a reporter's transcript or other record of the hearing in his opening brief. In his reply, he argues no transcript is required where an

appeal raises purely legal issues or where legal errors are apparent from the record.[6] Although he cites no legal authority to support this argument, we agree. As noted above, a transcript may not be necessary "if an appeal involves a legal issue requiring de novo review" (*Hood v. Gonzales, supra*, 43 Cal.App.5th at p. 79), or if an error is apparent "on the face of the existing appellate record" (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992). As we explain in the next section, however, *all* of appellant's arguments require us to consider what actually happened at the hearing, which makes the lack of a transcript fatal to his claims.

### B.     Analysis

Appellant argues the trial court committed reversible error in denying his request to renew the restraining order. He fails to demonstrate error.

Several of appellant's arguments focus on the WhatsApp text message that he claims respondent sent to him "through" Zamanian. He argues the trial court erred in finding the text message did not establish respondent continued to harass him after the restraining order was issued. He also argues, "California law does not permit a restrained person to evade a restraining order by acting 'through the agency of third parties,' " and although he cites no legal authority to support this argument, we agree. (See, e.g., *In re David L.* (1991) 234 Cal.App.3d 1655, 1658-1659 [criminal threat need not be directly

---

[6]     Appellant states in his reply that he requested "a [court] reporter with a fee waiver. The request was date-stamped as received-copy by the court, but the court neither filed it nor provided a reporter. [¶] On August 2, 2024, [a]ppellant presented his received stamped copy in open court; nonetheless, Judge Thorbourne denied knowledge of the request." (Bolding omitted.) The record on appeal, however, does not contain a request for a court reporter, and we cannot simply take appellant's word for it that he requested one but the judge denied knowledge of the request. Instead, "we may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record." (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) The bottom line is that we have not been provided with a reporter's transcript or any other record of what happened at the hearing.

communicated to the victim but may be "relayed to the victim through an intermediary" or "a third party"].) Finally, and relatedly, he notes that section 527.6 provides a court may enjoin a person from "threatening" or "contacting" someone "either directly *or indirectly*" (§ 527.6, subd. (b)(6)(A), italics added), and that the 2021 restraining order prohibited respondent from indirectly contacting him, and he argues the trial court erred by failing to find that respondent indirectly threatened him through Zamanian and thus violated the restraining order. The problem with all of these arguments is that we do not know what testimony or other evidence was admitted at the hearing about this text message, and we do not know what findings the trial court made about it. For example, the trial court could have found that Zamanian did not send the text message, as he stated in his declaration. Or the trial court could have found that Zamanian did send the text message, but that respondent had nothing to do with it. With no record of the hearing, we must presume either of these findings are supported by substantial evidence, and either finding would provide some support for the trial court's order. Again, " ' "[i]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' " (*Jameson v. Desta, supra*, 5 Cal.5th at p. 609.)

Appellant suggests "the law of the case" would preclude the trial court from finding respondent had nothing to do with Zamanian's text message, because in our prior decision we affirmed the trial court's order granting the request for a restraining order, and that request was based (in part) on appellant's claim that respondent used other people (including Zamanian) to harass and threaten him. Appellant misunderstands the law of the case.

" 'The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal.' " (*People v. Cooper* (2007) 149 Cal.App.4th 500, 524.) As

noted above, we affirmed the order granting the initial request for a restraining order largely because we had no transcript of the hearing and we thus presumed the order was correct; we did not state a principle or rule of law necessary to the decision (other than the principle that a judgment is presumed correct in the absence of a record affirmatively demonstrating error). "The doctrine of law of the case applies only to *legal principles* applied on appeal; *it has no application to factual determinations*." (*Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1368-1369, second italics added; see also *Sneed v. Osborn* (1864) 25 Cal. 619, 629 ["It is upon questions of law, that the decision of the appellate Court becomes the law of the case, and not upon questions of fact"].) "In other words, although an appellate court's legal determination constitutes the law of the case, 'upon a retrial . . . that law must be applied by the trial court to the evidence presented upon the second trial.' [Citation.] Thus, during subsequent proceedings in the same case, an appellate court's binding legal determination 'controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based. [Citations.]' [Citation.] Where . . . 'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.' " (*People v. Barragan* (2004) 32 Cal.4th 236, 246.) These same principles would apply where the subsequent proceeding was a request to renew a restraining order. Thus, even if the trial court that issued the restraining order in 2021 found, based on the evidence before it at that time, that respondent had caused Zamanian to harass or threaten appellant, that does not mean the trial court was required to find, based on the evidence before it at the 2025 hearing, that respondent caused Zamanian to send the WhatsApp text message.

Appellant argues, "By requiring evidence of direct new harassment by [respondent] . . . , the trial court misapplied the statute's standard." As discussed above, section 527.6 provides a restraining order may be renewed "without a showing of any further harassment since the issuance of the original order." (§ 527.6, subd. (j)(1).) Thus,

it is error to require a party to show further harassment since the issuance of the original order as a condition to renewing the order. (See *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 561 ["a trial court errs when it requires a party to show a violation of the restraining order as a condition to renewing that order"].) But there is nothing in the record before us that suggests the trial court required appellant to show further harassment, and "[a]bsent any evidence to the contrary, we presume that the trial court applied the correct legal standard." (*Ibid.*)

Appellant also argues he presented "undisputed evidence" of "repeated acts of harassment and threats of violence by [respondent]," and, relatedly, "[n]o substantial evidence controverts [his] showing of [respondent's] continued threats." Again, however, "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992, italics omitted.) Here, in the absence of a reporter's transcript or any error appearing on the face of the record, we presume the evidence adduced at the hearing would demonstrate the absence of error.

Although he cites no cognizable legal authority to support his argument, appellant correctly contends that a single threat of violence meets the statutory definition of harassment. Section 527.6, subdivision (b)(3), defines harassment as, among other things, "*a* credible threat of violence" (italics & bolding added), and that definition is certainly broad enough to include a single credible threat of violence. Appellant, however, fails to affirmatively show the trial court applied a different definition, and "[a]bsent indication to the contrary, we must presume that the trial court followed the applicable law." (*Harris v. Stampolis, supra*, 248 Cal.App.4th at p. 500.)

Appellant also argues the trial court erred in refusing to admit or denying him the opportunity to present relevant evidence, and in refusing to let his wife testify. Once

again, he fails to demonstrate error. " 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Although all relevant evidence is generally admissible (see Evid. Code, § 351; Code Civ. Proc., § 527.6, subd. (i)), Evidence Code section 352 provides a trial court with discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of . . . confusing the issues." "We review the trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code section 352 . . . for abuse of discretion." (*People v. Cole* (2004) 33 Cal.4th 1158, 1198.) " 'A trial court's exercise of discretion in admitting or excluding evidence . . . will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) Without a reporter's transcript or other record of the hearing, we do not know what evidence the trial court did or did not admit, and no evidentiary error "is apparent on the face of the existing appellate record." (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.) According, "the judgment must be conclusively presumed correct as to all evidentiary matters." (*Ibid*.)

Appellant contends, "At the hearing . . . , Hon. Judge Raoul M. Thorbourne dismissed this case based solely on a single question posed to [respondent]: [¶] '*Did you continue to harass [appellant and his wife] after the issuance of the CHRO on July 1, 2021?*' " Again, without a reporter's transcript or other record of the hearing we do not know whether the judge asked respondent this question, or, if he did, what her answer was, and we cannot simply take appellant's word for it that the judge did indeed dismiss this case based solely on respondent's (unknown) answer to this question.

Finally, appellant makes various arguments about credibility issues, the gist of which is that he is credible, and respondent is not. As we noted in our prior decision,

14

however, an appellate court does not consider the credibility of witnesses. (See *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1073.) Instead, " 'questions as to . . . the credibility of witnesses . . . are matters for the trial court to resolve.' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334.) "Venerable precedent holds that, in a bench trial, the trial court is the 'sole judge' of witness credibility. [Citation.] The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so. [Citation.] The fact finder's determination of the veracity of a witness is final." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) This is because "[f]act finders see and hear witnesses. The finder of the facts has a view appellate courts lack. That view is better." (*Ibid*.) Particularly with no record of the hearing, we presume the evidence supports any findings the trial court made regarding the credibility of witnesses.

## 2. Attorney Fees

The trial court awarded respondent $6,500 in attorney fees and $1,500 in costs pursuant to section 527.6, subdivision (s), which provides, "The prevailing party in an action brought pursuant to this section may be awarded court costs and attorney's fees, if any." "The normal rule of statutory construction is that when the Legislature provides that a court . . . 'may' do an act, the statute is permissive, and grants discretion to the decision maker. [Citations.] . . . Accordingly, we conclude that the decision whether to award attorney fees to a prevailing party—plaintiff or defendant—under section 527.6[, subdivision (s)] is a matter committed to the discretion of the trial court." (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802.) Determining which party is the prevailing party "lies in the trial court's sound discretion" and "must be upheld unless there is a manifest abuse of discretion." (*Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443.) A prevailing party includes a defendant in whose favor a dismissal is entered. (See *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777.)

Appellant does not argue it was an abuse of discretion to determine respondent was the prevailing party and thus eligible for attorney fees and costs in the court's discretion. He also does not directly challenge the amount of fees awarded. "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate," which may then be adjusted up or down "based on consideration of factors specific to the case." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Respondent's attorney stated she spent 19 hours on the case at an hourly rate of $350, for a total of $6,650 in fees, and the trial court awarded $6,500, or $150 less than requested. Appellant does not mention, much less challenge, the hourly rate, and he does not challenge the number of hours spent other than to state the attorney did "minimal legal work, making the award unreasonable and excessive." That is the extent of his discussion of this issue. When an appellant asserts a point "but fails to support it with reasoned argument and citations to authority, we treat the point as waived."[7] (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; see also *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 ["Points must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited"].)

Even if we did not treat the point as waived, appellant fails to convince us the fee award is unreasonable or excessive. The "abuse of discretion standard governs our review of the trial court's determination of a reasonable attorney fee." (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 697.) "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122,

---

[7] We also note that, given the large amount of papers appellant filed in this case, 19 hours to respond does not strike us as unreasonable.

1132.)  Appellant fails to convince us the amount awarded was clearly wrong.  Moreover, "because ' " '[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent . . .' " ' [citation], and error must therefore be affirmatively shown [citation], we cannot reverse an attorney fee award solely for lack of an explanation by the trial court.  We can reverse only if the record contains some indication that the trial court considered improper factors or . . . simply snatch[ed] its award 'from thin air.' " (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1189-1190.)  Here, the record contains no indication that the trial court considered improper factors or simply snatched its award from thin air.

Appellant's primary argument is that the trial court abused its discretion in awarding respondent fees and costs because he has "very low-income."  He contends the trial court "misapplied the law" because it failed to consider the "financial hardship" the award posed to him.  He cites no legal authority for the proposition that the trial court was required to consider the financial hardship the award would pose.

He cites two cases that hold a trial court must consider a party's ability to pay before awarding attorney fees—*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 and *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768—but those cases are inapplicable because they involve a fee statute—Family Code section 2030—that is unique to marital dissolution proceedings, and that requires the court to "consider the respective incomes and needs of the parties, including all evidence concerning income, assets and abilities, in exercising its discretion to award attorney's fees." (*In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, 1497.)  Section 527.6 does not contain a similar requirement and thus cases interpreting Family Code section 2030 have no application to the issue of whether a trial court abuses its discretion in awarding fees to the prevailing party pursuant to section 527.6.

17

We also note the Legislature knows how to require a court to consider ability to pay when awarding attorney fees and costs. For example, Family Code section 6344, which is part of the Domestic Violence Prevention Act (DVPA),[8] authorizes a court to award attorney fees and costs to the prevailing party, and also provides, "Before a court awards attorney's fees and costs pursuant to this section, the court shall first determine . . . that the party ordered to pay has, or is reasonably likely to have, the ability to pay." (Fam. Code, § 6344, subd. (c).) If the Legislature had intended to impose similar requirements on fees awarded pursuant to section 527.6, it would have said so, but it did not, and " '[w]e may not insert words into a statute under the guise of interpretation.' " (*Ruiz v. Musclewood Property Investments, LLC* (2018) 28 Cal.App.5th 15, 22; see also Code Civ. Proc., § 1858 [when construing statute, court may not insert what has been omitted].)

Appellant also argues "California's public policy strongly favors encouraging victims to use legal remedies to prevent harassment and violence," and awarding fees to a defendant in a civil harassment case "undermines the purpose of the statute by chilling victims from seeking protection." Appellant cites no legal authority to support his argument, and, as a general rule, "[s]uch a public policy argument is best made to the Legislature, not the courts. We must follow the law as it exists." (*Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1371.) Here, the law as it exists provides the court "may" award fees to the "prevailing party" (§ 527.6, subd. (s)), including a prevailing defendant (*Adler v. Vaicius, supra*, 21 Cal.App.4th at p. 1777). And case law establishes "a prevailing defendant can recover attorney fees in an action for injunctive relief against [civil] harassment, even if the action was brought in good faith and is not

---

**8** The DVPA authorizes a court to issue a restraining order for the purpose of preventing domestic violence. (See *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11.)

18

frivolous, if the trial court decides in its discretion to award such fees." (*Krug v. Maschmeier, supra*, 172 Cal.App.4th at p. 798.)

## DISPOSITION

The order denying appellant's request to renew the restraining order is affirmed.[9] Respondent shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
HULL, J.

_____/s/_____
MAURO, J.

---

[9]     Appellant's motion for sanctions against respondent and her attorney and his request that we judicially notice numerous documents in support of the motion for sanctions are denied. The motion for sanctions is based largely on a rehash of the arguments appellant makes on the merits, and for the reasons stated herein, we have rejected those arguments and thus find no cause for sanctioning respondent or her attorney.